UNITED STATES v. DEBELL et al.

(Circuit Court of Appeals, Eighth Circuit.   September 29, 1915.)

No. 4351.

1. INDIANS ⬤15—LANDS—FRAUDULENT PROCUREMENT FROM ALLOTTEE.

Evidence considered, and *held* to show that a fee-simple patent for an incompetent Indian woman allottee was fraudulently procured by the Indian agent and another, for the purpose of obtaining her land, but that the deed from her was executed before the issuance of the patent, while she still held under the trust deed with restrictions against alienation, and was therefore void.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 17, 29, 34, 37–44; Dec. Dig. ⬤15.]

2. INDIANS ⬤15—SUIT TO CANCEL CONVEYANCE BY ALLOTTEE—CONDITIONS TO GRANT OF RELIEF.

Although the land was still owned by the fraudulent purchaser, the action of the Department in granting the application for the fee-simple deed without due investigation at least contributed to the illegal transaction, and before the United States is entitled to a cancellation of the patent and deed, it should be required to refund the money paid for the land by such purchaser.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 17, 29, 34, 37–44; Dec. Dig. ⬤15.]

3. UNITED STATES ⬤144—SUITS IN EQUITY BY—CONDITIONS TO GRANT OF RELIEF.

A court of equity may condition its grant of relief to the United States by such requirements as may be just and equitable, although those requirements may not be enforceable in any other way.

[Ed. Note.—For other cases, see United States, Cent. Dig. § 142; Dec. Dig. ⬤144.]

Appeal from the District Court of the United States for the District of South Dakota; Jas. D. Elliott, Judge.

Suit in equity by the United States against E. J. Debell and W. C. Courtis. Decree for defendants, and complainant appeals. Reversed. See, also, 227 Fed. 771, —— C. C. A. ——.

E. W. Fiske, Asst. U. S. Atty., of Sioux Falls, S. D. (Robert P. Stewart, U. S. Atty., of Deadwood, S. D., and George Philip, Asst. U. S. Atty., of Sioux Falls, S. D., on the brief), for the United States.

William G. Porter, of Aberdeen, S. D. (E. L. Grantham, of Aberdeen, S. D., and Maurice Rose, of Minneapolis, Minn., on the brief), for appellees.

Before SANBORN and CARLAND, Circuit Judges, and LEWIS, District Judge.

SANBORN, Circuit Judge. This is a suit of the same character as that in United States v. Debell and Butterfield, 227 Fed. 760, —— C. C. A. ——, in which the opinion is filed herewith. The act of Con-

gress and the principles and rules of equity which condition the disposition of this suit are the same as those that were decisive of that case, and reference is made to the opinion therein for them, and for the views of the court relative to their application to cases of this character. This case differs from that in the fact that there is here no bona fide purchaser from Debell, and he still holds the land, a half section, which Clown Woman, a Rosebud Sioux Indian of the full blood, owned in 1907 and 1908 without the power of alienation, and which the United States was then holding in trust for her for 25 years from July 1, 1901, pursuant to the provisions of a trust patent which had been issued to her on that day.

[1] An extended recital of the evidence in this case will be omitted because the review of the evidence in the opinion in the suit against Debell and Butterfield sufficiently discloses the views of the court relative to the burden, character, and sufficiency of proof in such cases. In this case the evidence upon the question of the competency and capability of Clown Woman to manage her own affairs, and especially to sell her land and care for and manage the proceeds thereof, on the question of the time when her deed was signed and delivered by her, on the question of the knowledge of Debell and Courtis of her incompetence and of their intent to procure the patent in fee simple and to obtain her deed in violation or evasion of the policy and legislation restricting the power of incompetent Indians to sell and convey their lands, and on the question of the value of the land when they obtained her deed was conflicting. It may be said in passing, however, that the issue relative to the value of the land is not determinative in this case. If it were so, the evidence upon that issue is insufficient to prove that the land was of greater value than the $2,000 which Debell paid to Clown Woman for it. The chief purpose and main object of the restriction upon alienation is not to prevent the incompetent Indian from selling his land for a price too low, but to prevent him from selling it at all, to the end that he shall be prevented from losing, giving away, or squandering its proceeds and thus be left dependent upon the government or upon charity for his support. The evidence in this case clearly proves that Clown Woman gave away or in other ways so disposed of the moneys she received for her land that she lost the benefit of the greater portion of its value, and is left penniless.

We return to the evidence. It established these facts conclusively: Clown Woman was about 67 years old in 1907. She held her land under a trust patent dated July 1, 1901, with no power to alienate it until July 1, 1926. She was a widow. Her husband had died about 15 years prior to 1907. She had the usual characteristics of the native Indian woman. She had never attended a school, she could not read or write the English language, she could speak or understand but few English words, and her conversations with Debell were conducted through an interpreter. She could count silver money, but could not count paper money. She did not know the names of the months. She drew her rations from the government monthly, and had done so for many years. Her application for a patent in fee simple was dated June 1, 1907. It was written by Debell, and was accompanied with a

certificate that she had made no contract to sell her land in case a pat-ent in fee simple was granted to her, which was verified before Courtis on June 1, 1907. They were signed, "Heokawin or Clown Woman X," her mark and all of this signature but the mark was written by Debell. Kel-ley, the Indian agent, sent these papers to the Commissioner of Indian Affairs and a patent in fee simple to Clown Woman was issued March 23, 1908, but it was not delivered to her until May 9, 1908.

Upon the account book of Debell there are entries made by him personally under the dates February 17 and February 18, 1908, of a credit to Clown Woman "By land deposit 2,000" and of debits of sev-eral items aggregating $723.40, one of which is "Cash 400." Clown Woman deeded her land to Courtis, but Courtis subsequently deeded it to Debell, who they testified paid to Courtis whatever he had paid for it. They testified that Courtis gave Debell $400 in paper money, and Debell paid Clown Woman $400 in silver money when she signed the deed, and that later Debell paid back to Courtis what he had ad-vanced, and completed the payment of the $2,000 to Clown Woman. The fact is conclusively established that whenever Clown Woman signed the deed to Courtis, Debell gave her a big bag of silver money, which amounted to $400. The deed and its acknowledgment, which is signed by Debell, bear the date March 31, 1908, and Courtis conveyed the land to Debell by a deed dated January 5, 1909. The issue whether the deed was signed and delivered to Clown Woman on February 17 or 18, 1908, when Debell's entries on his account book charge the payment of the $400 to Clown Woman and credit the $2,000 to her for the land deposit, or when the deed and acknowledgment bear date, is of some importance because, if at the former date, the restriction on alienation was then actually and apparently complete, the deed was void, and it passed no title to Courtis or Debell. Monson v. Simon-son, 231 U. S. 341, 34 Sup. Ct. 71, 58 L. Ed. 210; Moffat v. United States, 112 U. S. 24, 5 Sup. Ct. 10, 28 L. Ed. 623; Iowa Land & Trust Co. v. United States, 217 Fed. 11, 13, 133 C. C. A. 121. Debell testified that the entries in his account book under the dates Febru-ary 17th and 18th were made about the time the deed was signed, but that the dates were wrong; that the deed was signed the day it bore date, but he could not account for the dates of the entries on the book. Debell and Courtis testified that the deed was signed after the patent was issued, but before it was received by Clown Woman. Courtis testified that he negotiated the purchase from Clown Woman. The witnesses to the deed, Louise Flood and Charley No Heart, testified that the talk which resulted in the sale and the signing of the deed by Clown Woman was conducted by Debell and Clown Woman, and that the only persons present were Debell, Clown Woman, No Heart, and Louise Flood, who acted as interpreter. Acts often speak louder and more truthfully than words. Personal interest, time, the inter-vening consideration of other matters dim and sometimes modify the memory, but the written record of the transaction made at the time when no motive to cause it to speak otherwise than the truth existed, is generally correct and, once made, never changes itself. It requires

a great stretch of faith to believe that Courtis purchased this land of Clown Woman, gave Debell $400 or $600 in paper money, and in consideration thereof Debell paid her on behalf of Courtis $400 or $600 in silver money for the land, and then portrayed that transaction by entries made by himself personally in his books of account by a credit to Clown Woman of $2,000 land deposit and a charge of $400 or $600 cash against her and in his favor. Why did he not make no entry at all if he had no interest in the purchase, or if he made any entries why did he not charge Courtis with the $400 or $600 in silver paid to Clown Woman and credit Courtis with the $400 or $600 in paper money which he had received from him? It requires still greater credulity to believe that the deed was not signed and delivered until March 31, 1908. All the witnesses agree that it was signed and delivered at the time the $400 was paid to Clown Woman. In view of the fact that Debell credited Clown Woman on his account book with the $2,000 land deposit and charged her with the $400 and with other items in February, 1915, and of all the evidence in the case relative to this subject, the court has reached the conclusion that Clown Woman signed her deed and delivered it to Debell in February, 1908, and that the date of the deed and the date of the acknowledgment were subsequently inserted therein.

The application for the patent in fee simple which Debell wrote and Clown Woman signed by her mark stated that she had 18 head of horses and 60 head of stock cattle, and that her former husband had taught her the ways of the white people. Kelley, sending the application to the Commissioner, wrote: "The statements set forth in her application are true in every respect, and I respectfully recommend that she be granted a patent in fee simple." She had no horses and just three cattle. She lived with her son, was drawing monthly rations from the government, and, as her son testified, eating off them. She had done no business or work for 15 years except to make a few moccasins and sell them for a little spending money. It cannot be that Debell or Courtis or Kelley did not know that the statements in the application were untrue, and that Clown Woman was incompetent and incapable of managing her own affairs, and especially of selling her land and managing its proceeds with any substantial degree of prudence or wisdom. Confidence in these conclusions is much confirmed by the facts that it was the duty of the Indian agent to list or enroll all the land of noncompetent Indians as noncompetent land; that Act of March 1, 1907, 34 Stat. c. 2285, p. 1018, provided that the Secretary might authorize the sale of such land, but that the proceeds of such sales should not be paid to the noncompetent Indian to dispose of as he chose, but that the Commissioner of Indian Affairs should hold them and apply or supervise the application of them to the best interest of the Indian; that the land of Clown Woman had been enrolled or listed in the Indian agent's office as noncompetent land by the issue clerk to whom Kelley had deputed the duty of determining the character and listing such lands; that Clown Woman had made an application for a sale of her land as noncompetent land under this act of March 1, 1907, and a notice thereof had been posted

at the agency before the patent in fee simple was issued; and that Kelley so conducted the proceedings for that patent that the issue clerk in charge of the noncompetent land had no notice or knowledge of them until after the patent had been received at the Indian agency. The court is unable to resist the conclusion that Clown Woman was incompetent and incapable of managing her own affairs, and especially of selling her land and caring for, managing, and disposing of its proceeds within the meaning of the first proviso of Act May 8, 1906, c. 2348, 34 Stat. 182, 183; that Debell, Kelley, and Courtis could not have been ignorant of this fact when they procured the patent and when the deed was obtained from Clown Woman; that Debell and Courtis with knowledge of this fact caused or aided Clown Woman to procure the patent in fee simple on false representations, and induced her to convey her land to Courtis, and through him to Debell, in violation or illegal evasion of the restriction on its alienation, the policy and the legislation of the nation for the purpose of preventing incompetent Indians from parting with their land and for the purpose of protecting and preserving their property and its proceeds for their use and benefit.

[2, 3] A single question remains. Should the United States be permitted to recover this land without refunding to Debell the $2,000 he paid to Clown Woman for it? While it is true that the United States is not liable for malfeasance or misfeasance of its officers or servants, it is also true that a court of equity may condition, and ought to condition, its grant of relief by such requirements as are just and equitable, although those requirements may not be enforceable in any other way (Farmers' Loan & Trust Co. v. Denver, L. & G. R. Co., 126 Fed. 46, 51, 60 C. C. A. 588, 593); that the equities of the United States appeal to the conscience of a chancellor with the same, but with no greater or less, force than those of a private corporation or individual in like circumstances (State of Iowa v. Carr, 191 Fed. 257, 266, 112 C. C. A. 477, 486); that they are governed by the same equitable rules and principles; that he who seeks equity ought to do equity; and that a court of chancery may vary, qualify, restrain, and modify the remedy it applies so as to do equity and avoid inequity to mutual and adverse claims and to the substantial rights of the parties. Jones v. Missouri Edison Electric Co., 144 Fed. 765, 781, 75 C. C. A. 631. The action of the United States in issuing the patent in fee, action which a reasonably watchful and just administration of the law would have prevented, certainly assisted, if it did not invite, the acts of Debell and Courtis, and it undoubtedly resulted in Debell's payment of the $2,000 to Clown Woman, which he would otherwise have retained. Clown Woman used part of that money for her own benefit and support, and she gave part of it to others. The United States ought to have sold her land under the act of March 1, 1907, and to have held the proceeds of that sale in trust, and to have expended, or caused them to be expended, for her support and comfort. A consideration of all the facts and circumstances surrounding this case, in the light of the principles and rules of equity to which reference has been made, leads the court to the conclusion that the avoidance of the patent, the

deed to Courtis, and the deed to Debell should be conditioned by the repayment to Debell of the $2,000 he paid to Clown Woman for this land, and upon that condition the patent and the deeds should be set aside.

The decree below must therefore be reversed, and the case must be remanded to the district court, with instructions to render a decree to the effect that on condition that the United States pays to Debell the sum of $2,000 within three months after the entry of the decree, the patent to Clown Woman, her deed to Courtis, and Courtis' deed to Debell be set aside and held for naught; that in case the $2,000 is not thus repaid, the land in controversy be sold at public sale, after due notice, under the direction of the court; that the parties to this suit and all persons claiming under them be thereby estopped from claiming this land, and that the title thereto be confirmed in the purchaser at the sale; that $2,000 of the proceeds thereof be paid to Debell and the remainder thereof be paid to the United States and held and applied by it to the use and benefit of Clown Woman and her heirs in the same way that it would have been held and applied if those proceeds had been realized from the sale of the land as noncompetent land, pursuant to the provisions of Act of March 1, 1907, 34 Stat. c. 2285, p. 1018, and that the defendants pay the costs of this suit. The decree may contain such other provisions, not inconsistent with the views expressed herein, as the court below may deem proper.