## UNITED STATES v. NEZ PERCE COUNTY, IDAHO, et al.

(District Court, D. Idaho, C. D. On Motion to Dismiss Complaint, June 1, 1916. On Motion to Dismiss Amended Bill of Complaint, February 27, 1917.)

1. **Indians** &⚭15(2)—**Construction of statute; "noncompetent" Indians are those without full power of alienation.**

   In Act March 1, 1907 (Comp. St. § 4225), providing that "any noncompetent Indian," who has an allotment of land in severalty subject to restrictions on alienation, or an interest in such an allotment by inheritance, may sell the same under such rules and regulations as the Secretary of the Interior may prescribe, the word "noncompetent" is not used as denoting mental incapacity, but as descriptive of any Indian who holds only under a trust patent, and is inclusive of all Indians who are without full power to alienate their property.

2. **Taxation** &⚭181—**Land bought with proceeds of trust allotment to Indians exempt from taxation.**

   Where trust allotments of Indians are sold as authorized by Act March 1, 1907 (Comp. St. § 4225), with the consent of the allottees, and the proceeds invested in other lands, which are also held in trust for them, such substituted lands are exempt from taxation.

In Equity. Suit by the United States against Nez Perce County, Idaho, and others. On motion to dismiss bill. Denied.

J. L. McClear, U. S. Atty., and J. R. Smead, Asst. U. S. Atty., both of Boise, Idaho.

Charles L. McDonald, of Lewiston, Idaho, and Henry S. Gray, of Portland, Or., for defendants.

On Motion to Dismiss Complaint.

DIETRICH, District Judge. The plaintiff seeks a decree declaring invalid the proceedings of the defendant county, whereby taxes were levied upon five different tracts of land held by "Theodore Sharp, superintendent of Ft. Lapwai Indian School, in trust," severally, for certain Nez Perce Indians, who, it is alleged, still maintain their tribal relations and are wards of the government. In brief, it is shown that these Indians are allottees on the Nez Perce Indian reservation, and that with their consent the government sold the lands allotted to them, and with the proceeds thereof purchased the lands in question, and holds the title in trust for them.

[1] The contention of the plaintiff is that, inasmuch as, up to the time of the sale, the original allotment was held in trust for the allottee, and was therefore exempt from taxation, the proceeds of the sale are likewise exempt. The defendants concede the general proposition that during the trust period Indian allotments cannot be taxed,

---

&⚭For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

and also that, if such allotment is sold under warrant of law, the proceeds of the sale continue to be exempt. It is contended, however, that there is no authority for making such sale until after the termination of the trust period, and that the attempted sales here were void, and that therefore in law the government still holds in trust the original allotment, which continues to be exempt from taxation, and that therefore the lands in question cannot be deemed to represent the proceeds of the sale of exempt property.

Upon examination I have not been able to find any statute authorizing a sale of allotted lands until after the termination of the trust period, and I am therefore inclined to sustain the defendant's position. It is now suggested in the written brief filed upon behalf of the government that in fact it can be shown that the lands in question were purchased with the proceeds of heirship lands, which admittedly the Secretary of the Interior has the power to sell; but in the absence of appropriate averments I cannot give heed to such a statement. The motion to dismiss must be disposed of upon the facts alleged in the complaint, and upon those alone.

[2] The further contention is made upon behalf of the defendants that, even if it should appear that the lands in question were purchased with the proceeds of heirship lands, the fact would not avail the plaintiff, for the reason, as contended, that the Secretary of the Interior has no authority under the law to reinvest such funds, but may only deposit them in an approved bank. This view seems to be predicated upon the Act of June 25, 1910 (Comp. St. § 4226), where it is provided:

"That hereafter any United States Indian agent, superintendent, or other disbursing agent of the Indian service may deposit Indian moneys, individual or tribal, coming into his hands as custodian, in such bank or banks as he may select: Provided, that the bank or banks so selected by him shall first execute to the said disbursing agent a bond, with approved surety, in such amount as will properly safeguard the funds to be deposited."

But I am inclined to think that the authority thus conferred is permissive, and not mandatory. It will be noted that the statute further provides that heirship funds "shall be paid to such heir or heirs as may be competent and held in trust subject to use and expenditure" for incompetent heirs. Apparently, therefore, if the Indian heir is competent, the proceeds arising from the sale of the heirship lands may be paid directly to him, and if incompetent they may be held intact, or may, within the discretion of the Secretary of the Interior, be used and expended for his use and benefit. However, this question is not directly before us at this juncture, and I do not finally decide it.

The motion will be allowed, and the plaintiff given 30 days in which to amend.

### On Motion to Dismiss Amended Complaint.

I find it necessary to revise the view I formerly entertained as to the power of Indians to dispose of allotted lands held under trust patents or under patents with restrictions against alienation. By the Act of March 1, 1907 (34 Stat. 1018 [Comp. St. § 4225]), it is provided:

"That any noncompetent Indian to whom a patent containing restrictions against alienation has been issued for an allotment of land in severalty, under

any law or treaty, or who may have an interest in any allotment by inheritance, may sell or convey all or any part of such allotment or such inherited interest on such terms and conditions and under such rules and regulations as the Secretary of the Interior may prescribe, and the proceeds derived therefrom shall be used for the benefit of the allottee or heir so disposing of his land or interest, under the supervision of the Commissioner of Indian Affairs."

In passing upon the original motion, the meaning of the term "noncompetent," as here used, was not discussed, and I accepted it as being the equivalent of "incompetent," and as implying legal incapacity, due to nonage, imbecility, or insanity. But upon further consideration I am persuaded that such restriction is too narrow. While undoubtedly the "competency" of an Indian is generally understood to imply a mental capacity, it is to be inferred, from expressions in both the acts of Congress and in reported judicial decisions, that there is in the legislative and judicial mind a close connection between the mental status of the Indian and his power or right to alienate his land, and that therefore in practice the legal power to alienate implies mental competency, and, upon the other hand, the absence of such power or right implies incompetency. For example, by section 6 of the act of 1887, as amended by Act May 8, 1906 (34 Stat. 182 [Comp. St. § 4203]), it is provided:

"That at the expiration of the trust period and when the lands have been conveyed to the Indians by patent in fee, as provided in section 5 of this act, then each and every allottee shall have the benefit of and be subject to the laws, both civil and criminal, of the state or territory in which they may reside."

Whatever may be the actual mental status of the Indians at the end of the 25-year period, there is here an assumption of their legal competency at that time, with all the rights and responsibilities of full citizenship. Again, by the provisions of section 1 of Act June 25, 1910 (36 Stat. 855 [Comp. St. § 4226]), the Secretary of the Interior is—

"authorized in his discretion to issue a certificate of competency, upon application therefor, to any Indian, or, in case of his death, to his heirs, to whom a patent in fee containing restrictions on alienation has been or may hereafter be issued, and such certificate shall have the effect of removing the restrictions on alienation contained in such patent."

The certification of the competency of the grantee under a restricted patent thus ipso facto operates to revise the patent. See, also, United States v. Debell, 227 Fed. 775, 142 C. C. A. 299, and United States v. Nice, 241 U. S. 591, 36 Sup. Ct. 696, 60 L. Ed. 1192. While, therefore, it may render the language of the provision above quoted from the Act of March 1, 1907, somewhat tautologous, the view seems to be unavoidable that Congress intended to use the term "noncompetent" as descriptive of an Indian holding only a trust patent or other patent containing restrictions against alienation, or, what is perhaps the equivalent, an Indian to whom, even though he may be actually competent, a certificate of competency has not been issued by the Secretary of the Interior, and that therefore the description "noncompetent Indian" is inclusive of all Indians who are without full power to alienate their property. Putting it in another way, while as applied to

267 F.—32

Indians the terms "competency" and "noncompetency" or "incompetency" are used in their ordinary legal sense, there is a presumption, conclusive upon the courts, that until the restriction against alienation is removed in the manner provided by law, either through the lapse of time or the positive action of the Secretary of the Interior, the allottee continues to be an "incompetent" Indian, at least in so far as concerns the land to which the restriction relates. That being true, whatever may have been the status of the Indians referred to in the complaint, it was within the power of the Secretary of the Interior to sell or authorize the sale of their allotments, and use, or permit the allottees to use, the proceeds of such sales for the purchase of the property which the defendant county asserts the right to tax. In other words, if the Indians were "competent," a sale could be consummated under the Act of May 8, 1906, and if they were "noncompetent" or "incompetent" it could be effected under the provision above quoted from the Act of March 1, 1907.

I see no reason for changing the view originally expressed touching the other question submitted. Accordingly, the motion will be denied, and the defendants will be given 30 days from the date hereof in which to answer.