UNITED STATES v. BOARD OF COM'RS OF OSAGE COUNTY, OKL., et al.

(Circuit Court of Appeals, Eighth Circuit. November 21, 1918.)

No. 5052.

1. APPEAL AND ERROR ⚮854(5)—REVIEW—AFFIRMANCE.
    Where defendants moved to dismiss on several grounds, the judgment of dismissal may be sustained on any of the grounds made in the motion to dismiss.

2. INDIANS ⚮27(1)—SUIT BY UNITED STATES—ADEQUATE REMEDY AT LAW.
    Act Okl. March 10, 1909 (Comp. Laws 1909, § 7616; Rev. Laws 1910, § 7367; Sess. Laws 1910–11, c. 152) and Act Okl. March 11, 1915 (Laws 1915, c. 107), afford a plain, speedy, and adequate remedy to property owners complaining of the erroneous assessment of taxes; so, no relief having been sought pursuant to the statutes, the United States, as guardian of Indian allottees, cannot maintain a suit in equity to enjoin sale of allotted lands for delinquent state and county taxes.

3. UNITED STATES ⚮124—SUITS BY —EQUITY JURISDICTION.
    The United States have no more rights, so far as equitable jurisdiction is concerned, than private citizens.

Appeal from the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

Suit by the United States against the Board of Commissioners of Osage County, Okl., and others. From a decree dismissing the bill, complainant appeals. Affirmed.

John A. Fain, U. S. Atty., of Lawton, Okl. (Joseph W. Howell, of Washington, D. C., on the brief), for the United States.

Preston A. Shinn, of Pawhuska, Okl. (Corbett Cornett, of Pawhuska, Okl., on the brief), for appellees.

Before SANBORN, CARLAND, and STONE, Circuit Judges.

CARLAND, Circuit Judge. The United States, as guardian of certain Osage Indian allottees, brought this suit against appellees to en-

⚮For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

join them from selling certain lands described in the complaint for delinquent state and county taxes assessed and levied for the years 1910 to 1917. The taxes so levied were alleged to be illegal for the reason that the assessments upon which they were levied were arbitrary, grossly excessive, discriminatory, and unfair; also that the lands of the Osages were systematically overvalued, and the lands of other taxpayers systematically undervalued. The appellees filed a motion to dismiss on the following grounds:

"(1) There is no proper party plaintiff.

"(2) The said bill of complaint shows on its face that the court is without jurisdiction thereof.

"(3) There is no federal question involved, and therefore the court is without jurisdiction.

"(4) The said bill of complaint does not state a cause in equity.

"(5) The plaintiff, and each and all of the Indians upon whose behalf this suit is brought, have a plain, speedy, adequate, and complete remedy at law."

[1] The court sustained the motion and dismissed the complaint upon the ground that the lands involved were by Act of Congress approved June 28, 1906, c. 3572, 34 Stat. 539, declared subject to taxation, and the plaintiff had no interest in said lands or authority to contest the taxes thereon or the sale of said lands for unpaid taxes. In order to sustain the judgment of dismissal appellees may rely here upon any of the grounds made in their motion to dismiss. Dowd v. United Mine Workers of America et al., 235 Fed. 1, 148 C. C. A. 495.

[2] The fifth ground above stated is insisted upon here to sustain the judgment of dismissal. If this ground is well taken, we have no authority to consider the other points urged. It is our opinion that the United States, or the Indians whom they represent, had a plain, adequate, and complete remedy at law under the statutes of Oklahoma. A law of Oklahoma effective March 10, 1909 (Compiled Laws Okl. 1909, p. 1526), provided:

"Said board [of equalization] shall meet on the third Monday of April of said year to examine the assessment rolls of such township, cities or towns, and to hear all complaints of persons who shall feel aggrieved by their assessment, and to correct, equalize and adjust the assessments therein by increasing or decreasing individual assessments or the aggregate assessments of such city, town, village or township, and if necessary they may require a reassessment of any or all the property therein, such correction, equalization, adjustment or reassessment, shall be for the purpose of causing the same to be assessed at its fair cash value as herein defined and decision of said board shall be final as to individual assessment unless an appeal is taken to the board of county commissioners on or before the first Monday in June next following."

July 17, 1910, said law was amended so as to provide for appeals from the board of county commissioners to the county court of the county in which the land was located. Said law also provided that the board of equalization should hold a session on the first Monday of June each year—

"for the purpose of equalizing, correcting and adjusting the assessment rolls in their county between the different townships by increasing or decreasing the aggregate assessed value of the property or any class thereof, in any or all of them to conform to the fair cash value thereof as herein defined: Provided, that the county board of equalization may for the purpose of having the assess-

ment of any city, town, village or township corrected, order a reassessment of any or all of the property therein." Compiled Laws of 1909, p. 1526; also Rev. Laws of 1910, § 7367.

### Said law further provided as follows:

"The proceedings before the board of equalization and appeals therefrom shall be the sole method by which assessments or equalizations shall be corrected or taxes abated. Equitable remedies shall be resorted to only where the aggrieved party has no taxable property within the tax district of which complaint is made." Rev. Laws 1910, § 7370.

### Thereafter a law effective June 10, 1911, provided as follows:

"The county equalization board shall meet at the county seat, and shall hold a session commencing on the first Monday in June of each year for the purpose of equalizing taxes over the county, notice of which shall be given at least ten days prior thereto in some newspaper of general circulation in the county. * * * Any person who may think himself aggrieved by the assessment of his property shall. have the right to appear before the board for the purpose of having the assessment of his property adjusted. Complaints against the assessment shall be determined by the board in a summary manner, and the assessor's lists shall be corrected and adjusted accordingly: Provided, that an appeal may be taken from the final action of said board as provided by law. Said board shall have the authority to raise, lower and adjust individual assessments, fixing the same as the fair cash value of the property; to add omitted property and to cancel assessments of property not taxable. * * * " Session Laws of 1910–11, p. 334, § 11, effective June 10, 1911.

"The board of county commissioners of each county may hear and determine allegations of erroneous assessments or mistakes or differences in the description or value of land or other property, at any session of said board, before the taxes shall have been paid, on application of any person or persons who shall, by affidavit, show good cause for not having attended the meeting of the county board of equalization, for the purpose of correcting such error, difference or mistake, and wherein a lot of land or portion thereof, or any other property, has been assessed to any one person, firm or corporation who or which did not own the same, or property exempt from taxation has been assessed, or which has been doubly or erroneously assessed, the board of county commissioners shall have power, and it shall be their duty to correct all such assessments, and if any such taxes, so erroneously assessed shall have been paid, the same shall be a valid charge against the county and shall be refunded by the board of county commissioners. * * * " Section 14 of the Act next above mentioned.

### A law effective March 11, 1915, provided as follows:

"Any taxpayer feeling aggrieved at the assessment as made by the assessor, or the equalization as made by the county board of equalization, may, during the session of said board, or, if the same is closed, within ten days after the first Monday in June, file with said assessor as secretary of said board, a written complaint specifying his grievances and the pertinent facts in relation thereto in ordinary and concise language and without repetition, in such manner as to enable a person of common understanding to know what is intended; and said board shall be authorized and empowered to take evidence pertinent to said complaint and for that purpose is authorized to compel the attendance of witnesses· and the production of books and papers by subpœna and to correct or adjust the same, as may seem just. And the stenographer of the county court is directed, at the request of the board, or taxpayer, to take shorthand notes of such testimony and to transcribe such complaint and evidence, and a full transcript of the action of the board thereon and file the same with his certificate as to its accuracy in the district court, the filing of which transcript shall complete said appeal, which shall, in due course, be examined and reviewed by said court and affirmed, modified or annulled as justice shall demand," etc. Session Laws 1915, § 2, p. 176.

"This act shall be construed to give remedies and rights in addition to those of appeal heretofore given by statute, but the remedies of resort to the boards and appeal therefrom shall be the sole remedies for the correction of assessments or equalization." Session Laws 1915, § 5, p. 177.

"In all cases where the illegality of the tax is alleged to arise by reason of some action from which the laws provide no appeal, the aggrieved person shall pay the full amount of the taxes at the time and in the manner provided by law, and shall give notice to the officer collecting the taxes, showing the grounds of complaint and that suit will be brought against the officer for recovery of them. It shall be the duty of such collecting officer to hold such taxes separate and apart from all other taxes collected by him, for a period of thirty days, and if within such time summons shall be served upon such officer in a suit for recovery of such taxes, the officer shall further hold such taxes until the final determination of such suit. All such suits shall be brought in the court having jurisdiction thereof, and they shall have precedence therein," etc. Session Laws 1915, § 7, p. 178.

The Supreme Court of the state of Oklahoma, in Board of Commissioners of Canadian County v. Tinklepaugh, 49 Okl. 440, 152 Pac. 1119, decided that the law of 1910 (section 7370) provided a speedy and adequate remedy for inequality or injustice in assessments or equalization and provided the sole method by which assessments or equalizations could be corrected. See, also, Board of Commissioners of Garfield County v. Field (Okl.) 162 Pac. 733.

We are clearly of the opinion that the United States and the individual Indians whose property was taxed had during the whole eight years that the taxes were imposed a plain, speedy, and adequate remedy at law. Section 267 of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1163), formerly section 723 of the Revised Statutes of the United States (Comp. St. 1916, § 1244), prohibits us from taking jurisdiction in equity where a plain, adequate, and complete remedy may be had at law. Such remedies as are provided by the statutes of Oklahoma above quoted have been held plain, adequate, and complete. Indiana Manufacturing Co. v. Koehne, 188 U. S. 681, 23 Sup. Ct. 452, 47 L. Ed. 651; Singer Sewing Machine Co. v. Benedict, 229 U. S. 481, 33 Sup. Ct. 942, 57 L. Ed. 1288; Stanley v. Supervisors of Albany, 122 U. S. 535, 7 Sup. Ct. 1234, 30 L. Ed. 1000; McDougal v. Mudge et al., 233 Fed. 235, 147 C. C. A. 241; McLaughlin et al. v. St. Louis Southwestern Ry., 232 Fed. 579, 146 C. C. A. 537; Smith v. Douglas County et al., 242 Fed. 897, 155 C. C. A. 482.

[3] The United States have no more rights, so far as equitable jurisdiction is concerned, than private citizens. United States v. Stinson, 197 U. S. 200, 204, 205, 25 Sup. Ct. 426, 49 L. Ed. 724; United States v. Detroit Timber & Lumber Co., 131 Fed. 668, 677, 67 C. C. A. 1, 10; United States v. Debell, 227 Fed. 775, 779, 142 C. C. A. 284; United States v. Chandler-Dunbar Water Power Co., 152 Fed. 25, 81 C. C. A. 221; United States v. Midway Northern Oil Co. (D. C.) 232 Fed. 619, 631; State of Iowa v. Carr, 191 Fed. 257, 266, 112 C. C. A. 477, and authorities there cited.

The judgment of the court below is therefore affirmed, upon the ground that there was an adequate remedy at law during the years mentioned to correct the errors of which complaint is made.