Vera Rogers **BROOKS** and Ada Rogers Graham, Plaintiffs,

v.

**NEZ PERCE COUNTY** et al., Defendants.

Civ. No. 2–72–27.

United States District Court, D. Idaho.

April 25, 1975.

Allen Sims and Robert P. Stephens of Idaho Legal Services, Inc., Lewiston, Idaho, for plaintiffs.

Dean W. Kaplan and Theodore V. Spangler, Jr., Asst. Attys. Gen., State of Idaho, State Tax Comm., Boise, Idaho, for defendant Nez Perce County, Idaho.

William A. Stellmon, Ware, Stellmon & O'Connell, Lewiston, Idaho, for defendants Vale and Vivian A. Lisher.

## MEMORANDUM OF OPINION AND ORDER

J. BLAINE ANDERSON, District Judge.

This matter is now before the Court on plaintiffs' motion for summary judgment on the questions of title and the right to possession of certain real property described below which plaintiffs contend is Indian trust property of which they were wrongfully dispossessed. The defendants, Nez Perce County ("County") and Vale and Vivian Lisher ("Lishers") have moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.

As is often the case, unconventional litigation in federal court brings with it difficult questions of federal jurisdiction. This case is no exception. The Court has considered the arguments and the briefs of the parties and is now of the opinion that it lacks the power to proceed. Accordingly, the motion for summary judgment will not be considered. The relevant facts set forth below are taken from the amended complaint and the supporting summary judgment papers.

### I.

The plaintiffs are the daughters of Hattie Davis Rogers, a full-blood Nez Perce Indian, now deceased, who was an allottee of an original trust patent on the Nez Perce Indian Reservation issued on June 13, 1895. On May 12, 1912, the United States, acting through the Superintendent of the Nez Perce Tribal Agency and in trust for Hattie Davis Rogers, purchased a parcel of real property within the Nez Perce Indian Reservation, described as Lot 1, Block 8, Toyaulkt's Addition, City of Lapwai, County of Nez Perce, State of Idaho ("subject property"). The money used to purchase the subject property was a portion of the proceeds from the sale of her original allotment by the United States at her request pursuant to 25 U.S.C. §

405,[1] proceeds which were likewise held in trust by the United States for her pursuant to that statute.

Sometime prior to January 10, 1916, the County levied and assessed property taxes against the subject property and other parcels of property which had also been purchased for other Indians with proceeds of the sale of their original allotment. Consequently, on that date the United States, acting in its fiduciary capacity as trustee of those properties, brought an action in the United States District Court for this district against the County to have those tax levies and assessments set aside and declared void, to enjoin the County from levying taxes on the properties in the future and to quiet title in the United States as trustee for the beneficiaries, one of which was Hattie Davis Rogers. United States v. Nez Perce County, No. 459. (Decree of Judge Dietrich, infra).

The County appeared and contested the relief sought, at one point moving to dismiss the government's amended complaint on the grounds that the subject property and the other parcels were not trust properties and, therefore, were taxable. In ruling on the motion, however, Judge Dietrich, then District Judge, concluded that the properties remained trust properties because the original allotments had been sold pursuant to what is now 25 U.S.C. § 405, such that the proceeds from the sale of the allotment also were held in trust for the benefit of the allottees and non-taxable. United States v. Nez Perce County, 267 F. 495 (D.C.Idaho 1917). Subsequently, on May 10, 1918, Judge Dietrich entered a decree in the case adjudging that any and all property tax levies, assessments

or tax deeds issued prior to January 10, 1916, on the subject property and the other parcels were null and void. The decree also enjoined the County from levying or assessing any taxes on the properties so long as the United States held title in trust for the beneficiaries and enjoined the County from in any manner encumbering or casting a cloud on the title of the United States or the interest of the beneficiaries or asserting any right or title to the interest of the United States or its Indian wards.

In 1923 the County again levied property taxes on the subject property in the amount of $44.29 and this assessment was never paid.

On May 27, 1926, Hattie Davis Rogers conveyed her beneficial interest in the subject property to her two minor daughters, the plaintiffs herein. This transfer was by deed entitled, "Deed Noncompetent Indian Lands" and provided that the transfer "was subject to the condition that while the title is in the grantees or heirs, the land or property shall not be alienated or encumbered without the consent of the Secretary of Interior, . . ." This deed was recorded in the offices of the Secretary of the Interior in Washington, D.C. However, there is nothing on its face indicating that the transfer was made with the consent of the Secretary.

On March 16, 1928, the County issued a tax deed to the subject property based upon the unpaid 1923 assessment and on May 12, 1937, held a tax sale of the subject property. The property and all improvements were purchased by Forrest Lisher for $253.50. Forrest Lisher later died, purportedly leaving the subject property to his wife, who, in 1972 con-

1. 25 U.S.C. § 405:

"Any noncompetent Indian to whom a patent containing restrictions against alienation has been issued for an allotment of land in severalty, under any law or treaty, or who may have an interest in any allotment by inheritance, may sell or convey all or any part of such allotment or such inherited interest on such terms and conditions and under such rules and regulations as the Secretary of the Interior may prescribe, and the proceeds derived therefrom shall be used for the benefit of the allottee or heir so disposing of his land or interest, under the supervision of the Commissioner of Indian Affairs; and any conveyance made hereunder and approved by the Secretary of the Interior shall convey full title to the land or interest so sold, the same as if fee-simple patent had been issued to the allottee."

veyed it to the Lishers. The Lishers have leased the subject property from time to time and now lease the property to the defendants Bernard and Audrey Charpentier, who operate a tavern on all or a portion of it.

Based upon these facts, the plaintiffs instituted this action against the County, the Lishers and the Charpentiers. Plaintiffs seek to have the tax assessment and tax deed and sale of subject property declared void, possession of the subject property, to quiet title in the name of the United States as trustee for them, an award of punitive damages and lost profits against the County, a declaration that the lease between the Charpentiers and the Lishers is void, and attorneys' fees.

## II.

In their amended complaint plaintiffs set forth numerous statutes which in their minds confer federal jurisdiction over their cause of action. Plaintiffs invoke jurisdiction under 28 U.S.C. § 1331, § 1343(3), § 1345, § 1337, § 1353 and 25 U.S.C. § 345. However, upon examination, their jurisdictional allegations are without merit.

■ 28 U.S.C. § 1343(3) [2] is the jurisdictional counterpart to 42 U.S.C. § 1983,[3] the civil rights statute. Thus, it is incumbent upon plaintiffs to allege in their complaint a cause of action against a "person" within the meaning of 1983

who has, under color of state law, deprived them of a right, privilege or immunity secured by the Constitution or laws. As respects their allegation of jurisdiction under 1343(3), it is sufficient to state that, at least with respect to suits for damages, a county is not a "person" within the meaning of the civil rights statute. Monroe v. Pape, 365 U. S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Viewing the allegations against the Lishers and the Charpentiers in their most favorable light, there is not the slightest allegation or inference that those defendants acted or are acting under color of state law to deprive plaintiffs of their property or that such a deprivation even amounted to a violation of civil rights. Sykes v. State of California, 497 F.2d 197 (9th Cir. 1974).

■ Neither is jurisdiction conferred under 28 U.S.C. § 1345.[4] Plaintiffs' argument that the United States, as trustee, has the right to bring this action but has not seen fit, giving the plaintiffs, as holders of the beneficial interest, the right to sue, does not alter the fact that this action was not "commenced by the United States". Cf. Senate Select Committee on Presidential Campaign Activities v. Nixon, 366 F. Supp. 51 (D.C.D.C.1973). Plaintiffs may certainly have the right to sue to protect their interests but 28 U.S.C. § 1345 provides no access for them into this Court.

2. 28 U.S.C. § 1343(3):
"The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

. . . . .

(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;"

3. 42 U.S.C. § 1983:
"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects,

or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

4. 28 U.S.C. § 1345:
"Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress."

Plaintiffs rely upon 28 U.S.C. § 1353 [5] which is a jurisdictional recodification of 25 U.S.C. § 345 [6]. However, the claim here is not of a denial of a right to an allotment of land as against the United States nor is the subject property an original allotment of land. 28 U.S.C. § 1353 was not intended as a jurisdictional means to determine title or possession to all Indian lands. Cf. Seifert v. Udall, 280 F.Supp. 443 (D.C. Mont.1968). It is a limited consent by the United States to be sued in order to assert the right to an allotment or the preservation of it as against the government. Scholder v. United States, 428 F.2d 1123 (9th Cir. 1970).

The allegation that jurisdiction is conferred by 28 U.S.C. § 1337 [7] is unique, considering the type of claim plaintiffs have set forth. Since plaintiffs also argue that jurisdiction is conferred by the federal question statute, 28 U.S.C. § 1331,[8] and rely upon the same statutes and treaty for both arguments, they will be considered together. If plaintiffs' action is not one "arising under" the Constitution, laws or treaties of the United States, then neither does it arise under an Act of Congress regulating commerce. Carlson v. Coca-Cola Company, 483 F.2d 279 (9th Cir. 1973).

The rules of play are well-known. Before an action may be considered as one "arising under" some federal law, the well-pleaded complaint must show that federal law is an essential element of the plaintiffs' claim, unaided by anticipatory, defensive allegations. Gully v. First National Bank, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936); Phillips Petroleum Company v. Texaco, 415 U.S. 125, 94 S.Ct. 1002, 39 L.Ed. 2d 209 (1974). And since plaintiffs' claim against the County is quite different from their claim against the Lishers and the Charpentiers, each claim must satisfy jurisdictional requirements.

Plaintiffs' amended complaint, as against the Lishers and the Charpentiers, is in the nature of an action for ejectment. See Petty v. Petty, 70 Idaho 473, 223 P.2d 158 (1950). Although plaintiffs also seek to quiet title to the subject property, this is an equitable remedy of which the Court will not take cognizance where there is an adequate

---

5. 28 U.S.C. § 1353:

"The district courts shall have original jurisdiction of any civil action involving the right of any person, in whole or in part of Indian blood or descent, to any allotment of land under any Act of Congress or treaty.

"The judgment in favor of any claimant to an allotment of land shall have the same effect, when properly certified to the Secretary of the Interior, as if such allotment had been allowed and approved by him; but this provision shall not apply to any lands held on or before December 21, 1911, by either of the Five Civilized Tribes, the Osage Nation of Indians, nor to any of the lands within the Quapaw Indian Agency."

6. 25 U.S.C. § 345:

"All persons who are in whole or in part of Indian blood or descent who are entitled to an allotment of land under any law of Congress, or who claim to be so entitled to land under any allotment Act or under any grant made by Congress, or who claim to have been unlawfully denied or excluded from any allotment or any parcel of land to which they claim to be lawfully entitled by virtue of any Act of Congress, may commence and prosecute or defend any action, suit, or proceeding in relation to their right thereto in the proper district court of the United States; and said district courts are given jurisdiction to try and determine any action, suit, or proceeding arising within their respective jurisdictions involving the right of any person, in whole or in part of Indian blood or descent, to any allotment of land under any law or treaty (and in said suit the parties thereto shall be the claimant as plaintiff and the United States as party defendant); . . . ."

7. 28 U.S.C. § 1337:

"The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies."

8. 28 U.S.C. § 1331:

"(a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States."

874

legal remedy available. Cf. Beacon Theatres v. Westover, 359 U.S. 500, 507, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959); Farmer v. Loofbourrow, 75 Idaho 88, 267 P.2d 113, 41 A.L.R.2d 774 (1954).

■ Viewing the amended complaint against the defendants in possession as one for ejectment, the Court believes the case of Taylor v. Anderson, 234 U.S. 74, 34 S.Ct. 724, 58 L.Ed. 1218 (1914) is controlling. In *Taylor*, as in this case, the plaintiffs were Indians who brought suit to remove the defendant from possession of property which plaintiffs claimed was not subject to alienation under federal law. In their complaint plaintiffs alleged that they claimed title to the property through an Indian predecessor who had received a patent on the property containing restrictions against alienation; that the defendant had obtained an illegal deed from the plaintiffs after their predecessor had died, but before patent had issued; and that the property was not subject to alienation under federal law by plaintiffs at the time the deed was executed or at the time the complaint was filed. See Taylor v. Anderson, 197 F. 383 (D.C.Okl.1911).

The District Court dismissed the complaint for lack of jurisdiction, reasoning that in an action for ejectment all that need be shown is that plaintiff has title to the property, he is out of possession and defendant is in possession wrongfully. Plaintiff must recover on the strength of his own title, not the weakness of his adversary's. Thus, the Court stated that federal law did not affirmatively appear as a basis of the plaintiff's cause of action. The allegations as to the basis for plaintiff's title were not necessary and the extraneous allegations as to the invalidity of the defendants' title were asserted in anticipation of a defense. On appeal to the United States Supreme Court, the District Court's holding was affirmed, the Court reiterating the District Court's reasoning.

Plaintiffs' allegations against the defendant in possession here are almost identical to those made in *Taylor*. Plaintiffs, in their complaint, trace their claim of title to the property, assert that the taxation and subsequent sale of the subject property were invalid under federal law and in violation of a previous order of this Court and that they are entitled to possession. However, it would have only been necessary to allege title in plaintiffs and wrongful possession by defendants. Petty v. Petty, supra. Plaintiffs' claim does not raise so much the question of the validity of plaintiffs' title as the invalidity of the defendants. The holding in *Taylor* applies *a fortiori*.

*Taylor* has been most recently reaffirmed in Oneida Indian Nation v. County of Oneida, 414 U.S. 661, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974). Although in *Oneida* the Supreme Court held that the complaint of the Oneida Tribe did raise a federal question, the Court stated:

"Nor in sustaining the jurisdiction of the District Court do we disturb the well-pleaded complaint rule of Taylor v. Anderson, supra, and like cases. [citations omitted] Here, the right to possession itself is claimed to arise under federal law in the first instance. Allegedly, aboriginal title of an Indian tribe guaranteed by treaty and protected by statute has never been extinguished. In Taylor, the plaintiffs were individual Indians, not an Indian tribe; and the suit concerned land allocated to individual Indians, not tribal right to lands. See 32 Stat. 641. Individual patents had been issued with only the right to alienation being restricted for a period of time. [citations omitted] Insofar as the underlying right to possession is concerned, Taylor is more like those cases indicating that 'a controversy in respect of lands has never been regarded as presenting a federal question merely because one of the parties to it has derived his title under an act of Congress.' Shulthis v. McDougal, 225 U.S. 561, 570, 32 S.Ct. 704, 56 L.Ed. 1205." *Oneida*, supra, 414 U.S. at p. 675, 94 S.Ct. at p. 781.

See also *Oneida*, supra (Rehnquist concurring).

The federal law to be interpreted would be dictated by the defense or defenses raised. Therefore, the cause of action for ejectment does not arise under federal law, nor does it arise under an Act of Congress regulating commerce.

 Likewise, plaintiffs' claim against the County does not arise under federal law. The claim sounds in tort for damages for the denial of plaintiffs' right to use the property, allegedly arising out of the tortious assessment and the subsequent issuance of the tax deed. But before such damages are proper, plaintiffs must establish their right to possession. Cf. Paurley v. Harris, 77 Idaho 336, 292 P.2d 765 (1956). At this point, therefore, it is important to note that the right to damages, if any, does not depend upon any federal law or the interpretation of it. It is only the right to possession which may involve the interpretation of federal law and, as has been previously stated, the allegation that title and the right to possession are derived from an Act of Congress are insufficient to create federal jurisdiction. The County may choose to concede that plaintiffs have the right to possession and defend upon some other basis. It follows therefore that federal law is not an essential element of the claim, nor is an Act of Congress regulating commerce.[9]

 Even if the action were viewed as based upon a prior judgment of this Court, it still would be of no help to the plaintiffs. The fact that a suit involves the construction or effect of a judgment of a federal court does not, for that reason, make it one arising under federal law. Metcalf v. Watertown, 128 U.S. 586, 9 S.Ct. 173, 32 L.Ed. 543 (1888); Prairie Band of Pottawatomie Tribe of Indians v. Puckkee, 321 F.2d 767 (10th Cir. 1963).

Based upon the foregoing,

It is therefore ordered that the motions to dismiss are hereby Granted and plaintiffs' complaint is dismissed without prejudice.

---

9. Even if the claim asserted is cognizable in equity, plaintiffs are not aided. There is no separate federal equitable jurisdiction in this situation. Plaintiffs as individuals are still confronted with the specific requirement that they must affirmatively point to a particular federal jurisdictional statute. The only conceivable one is Sec. 1331. But an equitable action thereunder must still "arise under" federal law. The asserted right to · cancellation of an allegedly invalid county tax deed may arise under an *application* of a combination of federal and state law. Jurisdiction would be afforded if the United States was plaintiff seeking cancellation, but not because of the equitable nature of the suit. Taylor v. Anderson, supra, 234 U.S. p. 76, 34 S.Ct. 724. Bowling v. United States, 233 U.S. 528, 34 S.Ct. 659, 58 L.Ed. 1080 (1914). It would arise from its authority to enforce the restraint which it imposed. Federal law may assist in establishing the authority for and the source of the right, but there is no federally-created claim opening the portals of this court. Original aboriginal rights of a tribe are in the distant past. Individual patents were issued decades ago with only restrictions on alienation remaining. Oneida Indian Nation v. County of Oneida, supra.