# MONSON *v.* SIMONSON.

ERROR TO THE SUPREME COURT OF THE STATE OF SOUTH
DAKOTA.

No. 14. Submitted October 30, 1913.—Decided December 1, 1913.

Restrictions on alienation imposed by § 5 of the act of February 8, 1887, 24 Stat. 388, c. 119, on an allotment to a Sisseton and Wahpeton Indian remained until the actual issuing of patent carrying full and unrestricted title, and were not removed instantly on its passage by an act of Congress permitting the Secretary of the Interior to issue such a patent.

An act of Congress authorizing and empowering the Secretary of the Interior to shorten the period of alienation of an Indian allotment construed in this case as being permissive only and not effecting the removal of the restrictions prior to the actual issuing of the patent by the Secretary.

A deed by an Indian of an allotment subject to restrictions on alienation is absolutely void if made before final patent, even if made after passage of an act of Congress permitting the Secretary of the Interior to issue such patent; nor does the unrestricted title subsequently acquired by the allottee under the patent inure to the benefit of the grantee. *Starr* v. *Long Jim*, 227 U. S. 613.

A state statute cannot make a deed the basis of subsequently acquired title to Indian allotment lands when the Federal statute has pronounced such a deed entirely void.

22 So. Dak. 238, reversed.

THE facts, which involve the title to land allotted to an Indian of the Sisseton and Wahpeton tribe under the act of February 8, 1887, and the effect of subsequent action by Congress in regard thereto on the restrictions against alienation, are stated in the opinion.

*Mr. M. D. Munn* and *Mr. Chester L. Caldwell* for plaintiff in error.

No appearance for defendant in error.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

This is a suit to determine conflicting claims to the title to 160 acres of land in Roberts County, South Dakota. Both parties claim through Henry A. Quinn, an Indian of the Sisseton and Wahpeton tribe, to whom the land was allotted under the act of Congress of February 8, 1887, 24 Stat. 388, c. 119, the fifth section of which, omitting portions not here material, reads as follows:

"That upon the approval of the allotments provided

for in this act by the Secretary of the Interior, he shall cause patents to issue therefor in the name of the allottees, which patents shall be of the legal effect, and declare that the United States does and will hold the land thus allotted, for the period of twenty-five years, in trust for the sole use and benefit of the Indian to whom such allotment shall have been made, or, in case of his decease, of his heirs according to the laws of the State or Territory where such land is located, and that at the expiration of said period the United States will convey the same by patent to said Indian, or his heirs as aforesaid, in fee, discharged of said trust and free of all charge or incumbrance whatsoever: *Provided*, That the President of the United States may in any case in his discretion extend the period. And if any conveyance shall be made of the lands set apart and allotted as herein provided, or any contract made touching the same, before the expiration of the time above mentioned, such conveyance or contract shall be absolutely null and void."

In 1889, following the approval of the allotment, a trust patent or allotment certificate, conforming to this statute, was duly issued to the allottee; and on March 3, 1905, nine years before the expiration of the trust period, Congress incorporated in the Indian appropriation act of that date (33 Stat. 1048, 1067, c. 1479) the following provision:

"That the Secretary of the Interior is hereby authorized and empowered to issue a patent to Henry A. Quinn for the east half of the northwest quarter, the northeast quarter of the southwest quarter, and the northwest quarter of the southeast quarter of section thirty-two, township one hundred and twenty-five north, range fifty west of the fifth principal meridian, South Dakota."

The land so described is that covered by the allotment, and a patent therefor, passing the full and unrestricted title, was issued to the allottee by the Secretary of the

Interior, June 29, 1905, in the exercise of the authority and power given by this provision.

Upon the trial it appeared that the plaintiff claimed under two warranty deeds from the allottee, one made and acknowledged May 31, 1905, and recorded June 2, following, and the other purporting to have been made . May 30, and acknowledged July 3, 1905, but not recorded. . The defendant claimed under a deed from the allottee executed and delivered July 10, 1905, and recorded the same day. The matters in controversy were, (1) whether the plaintiff's deed of May 31 was void because made and delivered before the unrestricted patent was issued, (2) the real date of the acknowledgment and delivery of the plaintiff's unrecorded deed and whether it was void for the like reason, and (3) whether the defendant purchased with notice of the plaintiff's claim under the latter deed. That deed was admitted in evidence over the objection of the defendant, and the ruling was made the subject of a special exception.

The trial court found the issues for the plaintiff, and while the finding made no mention of his deed of May 31, it did recite that his unrecorded deed was executed and delivered July 3, 1905; that he was in actual and open possession from that date until after the date of the deed to the defendant; and that the latter purchased with notice of the plaintiff's claim. Upon this finding a judgment was entered quieting the title in the plaintiff, and shortly thereafter a motion to vacate the judgment and for a new trial was interposed by the defendant, supported by divers affidavits purporting to set forth newly discovered evidence tending to discredit the plaintiff's unrecorded deed and the claim that it was acknowledged and delivered July 3, 1905. The motion was denied, and the defendant appealed to the Supreme Court of the State, which affirmed both the judgment and the order denying the motion. 22 So. Dak. 238. The affirmance was put upon

the ground that the plaintiff's deed of May 31 was valid, and, being a warranty deed purporting to convey the land in fee simple, the title subsequently acquired through the unrestricted patent inured to the plaintiff by operation of a statute of the State. Rev. Civil Code, § 947, subd. 4. Reaching that conclusion, the court deemed it unnecessary to consider or decide the questions presented respecting the plaintiff's unrecorded deed and the effect to be given to it.

The Federal question presented for decision by us is, whether the restrictions upon alienation imposed upon the allottee by § 5 of the act of 1887 were instantly removed by the act of March 3, 1905, or remained in force until the issuing of the patent carrying the full and unrestricted title. The defendant sought to maintain the latter view, but the state court sustained the other.

The act of 1887 was adopted as part of the Government's policy of dissolving the tribal relations of the Indians, distributing their lands in severalty, and conducting the individuals from a state of dependent wardship to one of full emancipation with its attendant privileges and burdens. Realizing that so great a change would require years for its accomplishment and that in the meantime the Indians should be safeguarded against their own improvidence, Congress, in prescribing by the act of 1887 a system for allotting the lands in severalty whereby the Indians would be established in individual homes, was careful to avoid investing the allottee with the title in the first instance, and directed that there should be issued to him what is inaptly termed a patent (*United States* v. *Rickert*, 188 U. S. 432, 436), but is in reality an allotment certificate, declaring that for a period of twenty-five years, or such enlarged period as the President should direct, the United States would hold the allotted land in trust for the sole use and benefit of the allottee, or, in case of his death, of his heirs, and at the expiration of that period would

convey to him by-patent the fee, discharged of the trust and free of any charge or incumbrance; and, as a safeguard against improvident conveyances or contracts made in anticipation of the ultimate or real patent, it was expressly provided that any conveyance of the land, or any contract touching the same, made before the expiration of the trust period should be absolutely null and void. It is thus made plain that it was the intention of Congress that the title should remain in the United States during the entire trust period, and that, when conveyed to the allottee or his heirs by the ultimate patent at the expiration of that period, it should be unaffected by any prior conveyance or contract touching the land.

It also is plain that, in the absence of further and permissive legislation, the Secretary of the Interior was without authority to shorten the trust period and at once invest the allottee with the title in fee. Recognizing that this was so, and for reasons deemed sufficient, Congress, by the provision in the act of March 3, 1905, clothed the Secretary with such authority with respect to this allotment. That provision says: "The Secretary of the Interior is hereby authorized and empowered to issue a patent" to the allottee. By "patent" is meant, of course, the ultimate patent passing the fee, for the trust patent or allotment certificate had issued sixteen years before. The language of the provision is permissive, not mandatory, and evidently was designed to enable the Secretary to shorten the trust period, by issuing the final patent, if in his judgment it seemed wise, but not to require him to do so. And it is significant that the provision contains no words directly or presently removing the existing restrictions upon alienation, while other kindred provisions in the same act, relating to other allotments, contain the words "and all restrictions as to sale, incumbrance, or taxation of said lands are *hereby* removed." It hardly can be said that the absence of those words in this instance

and their presence in others is not indicative of a difference in meaning and purpose. We conclude that the restrictions upon alienation contained in the act of 1887 were not instantly removed by the act of 1905, but remained in force as to this allotment until the Secretary of the Interior, in the exercise of the authority conferred by the latter act, terminated the trust period by issuing the final patent passing the fee.

As that patent was issued June 29, 1905, and as the deed from the allottee upon which alone the judgment of affirmance was rested was made and delivered May 31, preceding, it follows that this deed was, in the language of the statute, absolutely null and void, and that the title subsequently acquired by the allottee through the final patent could not inure to the plaintiff in virtue of his being the grantee in that deed. See *Starr* v. *Long Jim*, 227 U. S. 613, 624. A state statute could not make it the basis of passing subsequently acquired title when the Federal statute pronounces it entirely void. See *Bagnell* v. *Broderick*, 13 Pet. 436, 450; *Gibson* v. *Chouteau*, 13 Wall. 92, 99.

The judgment is accordingly reversed and the cause remanded, but without prejudice to the power of the Supreme Court of the State to proceed to a determination of the questions which were left open by its opinion. See *Murdock* v. *Memphis*, 20 Wall. 590, 635–636.

*Judgment reversed.*