## MULLEN ET AL. *v.* PICKENS ET AL.,

## MULLEN ET AL. *v.* GARDNER ET AL.

ERROR TO THE SUPREME COURT OF THE STATE OF OKLAHOMA.

Nos. 25, 26.   Submitted October 13, 1919.—Decided November 10, 1919.

Under the Choctaw and Chickasaw Supplemental Agreement (Act of
    July 1, 1902, c. 1362, 32 Stat. 641,) the heirs of a deceased Indian
    acquire no vendible interest, before selection, in land that·may be
    allotted in his name for their· benefit under § 22; and their war-
    ranty deed cannot operate, by·estoppel·or otherwise, to convey land
    selected and allotted after it was made. P. 592. *Franklin* v. *Lynch,*
    .233 U. S. 269, followed.   *Mullen* v. *United States,* 224 U. S. 448;
    *Doe* v. *Wilson,* 23 How. 457; *Jones* v. *Meehan,* 175 U. S. 1, distin-
    guished.
So *held* where the lands claimed were selected and allotted in lieu of
    other lands, described in the deeds, which had been selected be-
    fore the deeds were made but were afterwards allotted to other
    selectors.
56 Oklahoma, 65; 57 *id.* 186, affirmed.

THE cases are stated in the opinion.

*Mr. Fred R. Ellis* for plaintiffs in error.  *Mr. F. M.
Adams* was on the briefs.

No appearance for defendants in error.

MR. JUSTICE PITNEY delivered the opinion of the court.

These cases were submitted together and involve but a
single question, which turns upon the effect to be given to
the provisions of the Supplemental Agreement with the
Choctaw and Chickasaw tribes of Indians (Act of July 1,
1902, c. 1362, 32 Stat. 641) relating to the allotment of
the tribal lands. In each case an enrolled Indian died
subsequent to the ratification of the Agreement and before

selection of an allotment; in each case the personal representative selected lands for allotment in the name of the deceased Indian, which shortly afterwards were attempted to be conveyed by the heirs of such Indian by warranty deeds through which plaintiffs in error claim, each of which deeds contained a clause to the effect that if for any reason the selection of the lands described in the deed should be set aside, other lands should be selected instead, and these should pass to the grantees, and the grantors would execute further conveyances if necessary. In each case the selection for allotment thus made was set aside in contest proceedings, and another selection thereafter made, followed by an allotment in the name of the deceased Indian. And the question is whether plaintiffs in error, by virtue of the deeds for the prior selections and the special covenants contained in them, are entitled in equity to the lands subsequently allotted. The Supreme Court of Oklahoma held not. *Mullen* v. *Pickens*, 56 Oklahoma, 65; *Mullen* v. *Gardner*, 57 Oklahoma, 186. Its judgments were entered before the taking effect of the Act of September 6, 1916, c. 448, 39 Stat. 726, amending § 237, Judicial Code, and the present writs of error were applied for and allowed within the time permitted by § 7 of the amending act.

Pertinent provisions of the Supplemental Agreement are set forth in the margin.[1]

---

[1] 11. There shall be allotted to each member of the Choctaw and Chickasaw tribes, as soon as practicable after the approval by the Secretary of the Interior of his enrollment as herein provided, land equal in value to three hundred and twenty acres of the average allottable land of the Choctaw and Chickasaw nations, and to each Choctaw and Chickasaw freedman, as soon as practicable after the approval by the Secretary of the Interior of his enrollment, land equal in value to forty acres of the average allottable land of the Choctaw and Chickasaw nations; . . .

12. Each member of said tribes shall, at the time of the selection of his allotment, designate as a homestead out of said allotment land equal in value to one hundred and sixty acres of the average allottable land

In *Franklin* v. *Lynch*, 233 U. S. 269, a white woman, widow of a Choctaw Indian, having applied to be admitted as a member of the tribe by intermarriage, made a warranty deed in October, 1905, for lands exclusive of homestead which might be finally allotted to her, with an accompanying agreement to make conveyance when the land should be actually allotted. Thereafter she was enrolled as an intermarried citizen, made her selection, and received a patent for land, all of which, except the homestead, she sold for value to other parties. This court held (affirming the Supreme Court of Oklahoma) that the earlier deed and the agreement were void because until allotment the Indian had no undivided interest in the tri-

of the Choctaw and Chickasaw nations, as nearly as may be, which shall be inalienable during the lifetime of the allottee, not exceeding twenty-one years from the date of certificate of allotment, and separate certificate and patent shall issue for said homestead.

15. Lands allotted to members and freedmen shall not be affected or encumbered by any deed, debt, or obligation of any character contracted prior to the time at which said land may be alienated under this Act, nor shall said lands be sold except as herein provided.

16. All lands allotted to the members of said tribes, except such land as is set aside to each for a homestead as herein provided, shall be alienable after issuance of patent as follows: One-fourth in acreage in one. year, one-fourth in acreage in three years, and the balance in five years; in each case from date of patent: *Provided,* That such land shall not be alienable by the allottee or his heirs at any time before the expiration of the Choctaw and Chickasaw tribal governments for less than its appraised value.

22. If any person whose name appears upon the rolls, prepared as herein provided, shall have died subsequent to the ratification of this agreement and before receiving his allotment of land the lands to which such person would have been entitled if living shall be allotted in his name, and shall, together with his proportionate share of other tribal property, descend to his heirs according to the laws of descent and distribution as provided in chapter forty-nine of Mansfield's Digest of the Statutes of Arkansas: *Provided,* That the allotment thus to be made shall be selected by a duly appointed administrator or executor. . . .

bàl land nor any vendible interest in any particular tract, and because the attempted conveyance was in conflict with the provisions of §§ 15 and 16 of the Supplemental Agreement to the effect that lands allotted should not be affected by any deed, debt, or obligation contracted prior to the time àt which such land might be alienated under the act, and should not be alienable except after issuance of patent. It was contended that the prohibition against sale, in its application to the particular case, had been removed by the Act of April 21, 1904, c. 1402, 33 Stat. 189, 204, providing that "All the restrictions upon the alienation of lands of all allottees of either of the Five Civilized Tribes of Indians who are not of Indian blood" should be removed. But we held that while this removed the restriction to the extent of permitting members who were not of Indian blood to sell land after it had been actually allotted in severalty, it did not permit even a non-Indian to sell a mere float or expectancy.

It is insisted that a different rule must be applied with respect to lands allotted pursuant to § 22 in the name of a deceased member for the benefit of his heirs, as to which there is no express restriction upon alienation like those found in §§ 15 and 16, and, in the absence of such restriction, no obstacle in the way of the owner conveying his equitable interest after allotment, as was held by this court in *Mullen* v. *United States*, 224 U. S. 448, 457; (and see like rulings, as to the corresponding provisions of the Creek Agreement, in *Skelton* v. *Dill*, 235 U. S. 206, 210, and *Woodward* v. *DeGraffenried*, 238 U. S. 284, 319). But the decision in *Franklin* v. *Lynch, supra,* was based not alone upon the express restrictions, but upon the absence of individual interest in the tribal land prior to allotment and the general policy of the Agreement not to permit the improvident sales that would result if a prospective allottee were enabled to sell his expectancy.

We have not overlooked the fact that in construing a

treaty made October 27, 1832 (7 Stat. 399), between the
United States and the Pottawatomie Indians, ceding their
possessory interest in certain lands to the United States,
with a reservation of a considerable number of sections
to particular named Indians to be granted to them when
selected, it was held by this court in two cases that the
treaty itself converted the reserved sections into individual
property and created an equitable interest that was the
subject of sale and conveyance, and that warranty deeds
made prior to selection operated to vest the title in the
grantee as soon as the lands were selected and patented.
*Doe* v. *Wilson* (1859), 23 How. 457; *Crews* v. *Burcham*
(1861), 1 Black, 352. Nor that a similar result was reached
in *Jones* v. *Meehan*, 175 U. S. 1, 21, 23, 32, under the
provisions of a treaty with certain bands of Chippewa
Indians made October 2, 1863, by which a particular reser-
vation was set apart for one of their principal chiefs.

But we deem it impossible in right reason to apply the
doctrine of these decisions to the case in hand. Section 22
of the Supplemental Agreement provides not for any special
grant or reservation in favor of particular Indians upon
any special meritorious consideration, but makes a sub-
stituted provision, in the allotment scheme, in favor of
the heirs of any enrolled Indian who might happen to die
after the ratification of the Agreement and before selec-
tion of his allotment. In the absence of anything to the
contrary, the lands prior to allotment were to remain
communal, without private interest that was capable of
descent or alienation. *Gritts* v. *Fisher*, 224 U. S. 640, 642;
*Sizemore* v. *Brady*, 235 U. S. 441, 449–451. And no reason
is suggested, nor does any occur to us, for creating by im-
plication from the provisions of § 22 a separate interest
or equity in the heirs of a deceased member prior to allot-
ment that by the general scheme of the act and the express
provisions of §§ 15 and 16 was withheld from a member
entitled to receive an allotment in his own right. The

implication is clearly to the contrary; and we hold that not only by the terms of § 22 does the equity of the heir of a deceased member take its inception at the selection of the allotment, but that any previous attempt to sell his expectancy is contrary to the spirit and policy of the act.

*Mullen* v. *United States,* 224 U. S. 448, 457, cited by plaintiffs in error, is not in point, for the lands there in controversy had been duly allotted, and the only question was whether they might be alienated thereafter and before the issuance of patent, a question affirmatively answered by reference to the proviso of § 19 of the Act of April 26, 1906, c. 1876, 34 Stat. 137, 144.

In confirmation of our view as to the meaning and effect of § 22 of the Supplemental Agreement, reference may be made to several acts of Congress respecting restrictions upon the lands of the Five Civilized Tribes, containing some provisions for their removal, and others for their maintenance except so far as removed, the language of which is inconsistent with the theory that there was any individual interest or equity in such lands prior to the selection of an allotment. Act of April 21, 1904, c. 1402, 33 Stat. 189, 204; Act of April 26, 1906, c. 1876, § 19, 34 Stat. 137, 144; Act of May 27, 1908, c. 199, 35 Stat. 312. They amount to a legislative declaration of the true intent and meaning of the Agreements respecting allotment of the lands of these tribes.

The provisions of the Supplemental Agreement having permitted no conveyance of an interest in the tribal lands prior to allotment, it is obvious that this policy cannot be evaded by giving to a conveyance with warranty or its equivalent, made prior to actual allotment, effect as a covenant to convey an allotment thereafter to be selected, either upon the ground of estoppel or because of any state statute having like force. *Starr* v. *Long Jim,* 227 U. S. 613, 624; *Monson* v. *Simonson,* 231 U. S. 341, 347.

*Judgments affirmed.*