## BUNCH *v.* COLE ET AL.

ERROR AND CERTIORARI TO THE SUPREME COURT OF THE
STATE OF OKLAHOMA.

No. 33. Submitted March 16, 1923.—Decided November 19, 1923.

When a lease of an Indian allotment made by the allottee in excess of the powers of alienation allowed him by acts of Congress, is declared by those acts to be absolutely null and void, a state statute which, as applied by the state court, gives it effect as creating a tenancy at will and as controlling the amount of compensation which the allottee may recover for the use and occupation of the land by the persons named as lessees, is to that extent invalid under Article VI, cl. 2, of the Constitution. P. 253.

85 Okla. 38, reversed; certiorari dismissed.

ERROR to a judgment of the Supreme Court of Oklahoma which reversed a judgment recovered by the present

plaintiff in error in a trial court, in his action to recover for wrongful use and occupation of his allotted land.

*Mr. Dennis T. Flynn, Mr. Robert M. Rainey* and *Mr. Streeter B. Flynn,* for plaintiff in error and petitioner. *Mr. William Neff* and *Mr. Lewis E. Neff* were also on the briefs.

*Mr. Benjamin Martin, Jr.,* for defendants in error and respondents.

MR. JUSTICE VAN DEVANTER delivered the opinion of the Court.

This was an action by an Indian allottee to recover for a wrongful occupancy and use of his land.

The plaintiff was an adult Cherokee Indian of the full blood, enrolled and recognized as a member of the tribe and still a ward of the United States. The land was an eighty-acre tract which had been allotted to him in the division of the tribal lands,—forty acres as a homestead and the remainder as surplus land. He had full title, but his power to alien or lease was subject to restrictions imposed by Congress for his protection. By three successive instruments, each given for a cash rental of $75, he leased the land, both homestead and surplus, to the defendants for agricultural purposes. The first lease was given late in 1915 for a term of one year beginning January 1, 1916; the second was given early in July, 1916, for a term of one year beginning January 1, 1917, and the third was given late in July, 1917, for a term of one-year beginning January 1, 1918. The defendants went into possession under the leases, and in 1917 and 1918 sublet the land to others. From the subletting the defendants realized $890.40 in 1917, and $384.35 in 1918, these sums representing the actual rental value on a crop-sharing basis in those years.

The action was begun in 1919 on the theory that the leases were made in violation of the restrictions imposed

by Congress, and therefore were wholly void. At first a recovery was sought for all three years, but afterwards the claim for 1916 was dropped. On the trial the court treated the leases for 1917 and 1918 as void, but ruled that the plaintiff had waived the invalidity of the lease for 1917 by not promptly objecting to any occupancy or use under it, and so could not recover for that year. A recovery was had for 1918 of a sum conforming to what the defendants had realized from the subletting for that year, with interest. Both parties appealed to the Supreme Court of the State, and it reversed the judgment with a direction that no recovery be allowed for either year. 85 Okla. 38. That court treated the leases for both years as void; but construed and applied a statute of the State as in effect requiring that the leases be regarded as creating a tenancy at will and controlling the amount which the plaintiff was entitled to demand and receive. This was done over his objection that the state statute, so construed and applied, was in conflict with the congressional restrictions, and therefore was invalid. The plaintiff prosecutes this writ of error. Upon his petition a writ of certiorari was granted, 260 U. S. 716, but as it appears that the writ of error was well grounded, the writ of certiorari will be dismissed.

The power of Congress to impose restrictions on the right of Indian wards of the United States to alien or lease lands allotted to them in the division of the lands of their tribe is beyond question; and of course it is not competent for a State to enact or give effect to a local statute which disregards those restrictions or thwarts their purpose. *Tiger v. Western Investment Co.*, 221 U. S. 286, 316; *Monson v. Simonson*, 231 U. S. 341, 347; *Brader v. James*, 246 U. S. 88, 96; *Mullen v. Pickens*, 250 U. S. 590, 595.

An examination of the several enactments by which Congress has restricted the leasing of Cherokee allotments

for agricultural purposes [1] discloses that when the leases in question were given the situation was as follows:

1. An adult allottee of the full blood could lease the homestead for not exceeding one year, and the surplus for not exceeding five years, without any approval of the lease, but could not lease for longer periods without the approval of the Secretary of the Interior.

2. Any lease not permitted by the restrictions was to be " absolutely null and void."

The permission given to lease for limited periods without approval was not intended to authorize the making of leases which were to begin at relatively distant times in the future, but only the making of such as were to take effect in possession immediately or, what was equally within the spirit of the permission, on the termination of an existing lease then about to expire. *United States v. Noble,* 237 U. S. 74, 82–83. And see *Dowell v. Dew,* 1 Younge & Collier's C. C. 345, 357; same case on appeal, 7 Jurist, 117.

It is conceded, and we think rightly so, that the leases for 1917 and 1918 fell outside the permission given. Both covered the homestead as well as the surplus land; both were made midway during the term of a like lease theretofore given and were to take effect in possession on the expiration of that lease, and neither was approved by the Secretary of the Interior. Being outside the permission, they were, as declared in the restricting provision, " absolutely null and void."

Obviously a lease which Congress, in the exertion of its power over land allotted to an Indian ward, pronounces absolutely void cannot be validated or given any force by a State; and a state statute which requires that such a

---

[1] Act of July 1, 1902, c. 1375, § 72, 32 Stat. 716, 726; Act April 26, 1906, c. 1876, §§ 19 and 20, 34 Stat. 137, 144; Act May 27, 1908, c. 199, §§ 2 and 5, 35 Stat. 312.

lease be regarded as effective for any purpose is necessarily invalid in that respect. *Monson* v. *Simonson, supra; Mullen* v. *Pickens, supra.*

The Supreme Court of the State, although recognizing the invalidity of the leases under the congressional restrictions, construed and applied a statute of the State (§3783, Rev. Laws 1910) as in effect requiring that the leases be regarded as creating a tenancy at will and controlling the compensation which the allottee could demand and the defendants should pay for the occupancy and use of the land. We of course must treat the local statute as intended to operate as that court says it does, and must determine its validity on that basis. In that view of it, we think the conclusion is unavoidable that it gives force and effect to leases which a valid enactment of Congress declares shall be of no force or effect, and that in this respect it must be held invalid under Article VI, cl. 2, of the Constitution of the United States.

The state court was persuaded that its conclusion had support in decisions dealing with leases made between parties entirely competent to make them but not executed in conformity with local laws, such as the statute of frauds. But decisions of that class are not apposite. These leases were made in violation of a congressional prohibition. They were not merely voidable at the election of the allottee, but absolutely void and not susceptible of ratification by him. Nothing passed under them and none of their provisions could be taken as a standard by which to measure the compensation to which the allottee was entitled for the unauthorized occupancy and use of his land.

It is not our province to enquire particularly into the need for the protection intended to be afforded by the restrictions, but, if it were, the need would find strong illustration in this case; for it appears that each of the leases was obtained for a cash rental of $75 and that when

the time arrived for assuming possession under them the defendants readily sublet the land on terms which netted them $890.40 in 1917 and $384.35 in 1918, the latter year being one of pronounced drought.

*Judgment reversed on writ of error.*
*Writ of certiorari dismissed.*