## ARNOLD v. ARDMORE CHAMBER OF COMMERCE INDUSTRIAL CORPORATION et al.

(Circuit Court of Appeals, Eighth Circuit. March 30, 1925.)

No. 6574.

1. Ejectment ⚖=9(3)—Plaintiff in ejectment can recover only on strength of own title, and not on weakness of adversaries'.

Plaintiff in ejectment can recover only on strength of her own title, and not on weakness of that of her adversaries'.

2. Indians ⚖=18—Written declaration of heirship by three-fourths blood Indian held not to vest any interest in land subsequently allotted.

Under Rev. St. § 2116 (U. S. Comp. St. § 4100), and Act Cong. July 1, 1902, §§ 12, 15, 16, 42, three-fourths blood Choctaw Indian had no individual alienable right or interest in allotment before she selected it, and her written declaration of heirship, under Mansfield's Dig. Ark. 1884, §§ 2544, 2545, made two months before she selected her allotment, did not vest any title or right to possession in person designated as her heir at law; Act May 2, 1890, § 31, being inapplicable.

In Error to the District Court of the United States for the Eastern District of Oklahoma; Robert L. Williams, Judge.

Action of ejectment by Gena Tippett Arnold against the Ardmore Chamber of Commerce Industrial Corporation and others. Judgment for defendants, and plaintiff brings error. Affirmed.

Cad Mathis, of McAlester, Okl., for plaintiff in error.

H. A. Ledbetter, of Ardmore, Okl. (F. M. Adams, T. B. Orr, and H. E. Ledbetter, all of Ardmore, Okl., on the brief), for defendants in error.

Before SANBORN, Circuit Judge, and TRIEBER and PHILLIPS, District Judges.

SANBORN, Circuit Judge. The plaintiff, Gena Tippett Arnold, brought this action of ejectment against the defendants,

Ardmore Chamber of Commerce Industrial Corporation and others, to recover from them the possession, rents, and profits of 276.64 acres of land in Carter county, Okl., which was in their possession. The parties properly pleaded their respective claims to the title and possession of this land, a jury was waived, and the issues were tried by the court, which found that the plaintiff had no title to the property and dismissed her action with costs.

Jane Bell was a three-fourths blood Mississippi Choctaw Indian; the land in controversy was her allotment. Pursuant to and in accordance with the provisions of sections 2544 and 2545 of Mansfield's Digest (1884) of the Laws of Arkansas, which, so far as they are not locally inapplicable or in conflict with any act of Congress, were extended over and put in force in the Indian Territory by Act May 2, 1890 (26 Stat. c. 182, §§ 29, 31, pp. 81, 93, 95), Jane Bell on October 26, 1904, in writing, properly attested and acknowledged, made the plaintiff in this action her heir at law to take her estate at her death as her child, and such declaration was duly recorded in the proper county on the same day. Plaintiff's claim to the property in controversy rests on this declaration.

The defendants insist that this declaration was and is ineffectual to vest any title in the plaintiff, and seek to deduce title in themselves through a will of Jane Bell, made by her on August 26, 1906, and a subsequent sale by an administrator with the will of Jane Bell annexed to devisees, under whom the defendants claimed title and possession.

[1, 2] As this is an action in ejectment against defendants in occupation of the land, and the plaintiff can recover only on the strength of her own title, and not on the weakness of that of her adversaries, the first question in this case is: Did the declaration of heirship vest any title to or right of possession of this land in the plaintiff?

The title to the lands of the Choctaws was originally in the tribe, and no member of the tribe had any individual or separable right, title, or interest to any part of it. The Revised Statutes declare that no conveyance by an Indian tribe will be of any validity at law or in equity, unless authorized by treaty. Section 2116, Revised Statutes; section 4100, U. S. Compiled Statutes. As neither the Choctaw Tribe nor any member of it had the power of disposition of the tribal lands, and it was very desirable that the respective members of the tribe should become personally interested in improving and cultivating them, and should be inspired by the

hope of ultimate ownership and power of disposition to improve and sell these lands, the United States conceived and adopted the public policy of making agreements with the Choctaw Tribe and other tribes for a division and allotment of their lands to the respective members of those tribes and for the subsequent issue of patents to them therefor.

Aware that the members of these tribes were simple, inexperienced, and improvident Indians, and that, if they were given the unrestricted power of disposition of their lands, the greater knowledge, shrewdness, and avarice of their white neighbors would speedily deprive them of their lands and all benefits from them, for little or no compensation in return, the United States adopted as an indispensable part of its policy in the administration of these lands the careful restriction of the power of alienation of the allottees of the lands in any way not expressly authorized by its acts of Congress. In pursuance of this policy it made the Supplemental Agreement with the Choctaw and Chickasaw Tribes, which was ratified by the Act of Congress of July 1, 1902 (32 Stat. 641), which is a contract with them and a law of the United States. That agreement provided that each member of these tribes, at the time of his selection of his allotment, should designate a homestead out of his allotment, which should be inalienable during the lifetime of the allottee. Section 12, p. 642. The allottee in the case in hand lived until June 30, 1908. That agreement provided that the lands allotted thereunder to members of the tribes should "not be affected or incumbered by any deed, debt, or obligation of any character contracted prior to the time at which said land may be alienated under this act" (section 15, p. 642); that all lands allotted to the members of these tribes, except such land as was set aside as a homestead, should be alienable after issuance of patent as follows: "One-fourth in acreage in one year, one-fourth in acreage in three years, and the balance in five years; in each case from date of the patent" (section 16, p. 643). The patent to the homestead on the land in controversy was issued April 16, 1909, and the patent to the surplus allotment on March 18, 1909. The agreement provided that such a Mississippi Choctaw as Jane Bell, upon due proof of continuous residence for three years on the lands of the Choctaws and Chickasaws, should receive a patent for her allotment. Section 42, p.

651. Jane Bell proved her continuous residence for three years on September 8, 1907.

The provisions of this Supplemental Agreement and the public policy of the United States, disclosed by its acts of Congress and the decisions of the courts in the disposition and administration of these Indian lands, condition the answer to the question whether or not the declaration of heirship here in controversy vested the title and right of possession to Jane Bell's allotment in the plaintiff. She selected her allotment on January 12, 1905. Until she selected her allotment, she had no individual, separable right, title, or interest in the land which subsequently became her allotment. She made her declaration of heirship on October 26, 1904, more than two months before she selected her allotment, and at the time she made that declaration she had no alienable or descendable right or interest in that land. She was on October 26, 1904, by the express terms of section 15 of the Supplemental Agreement (32 Stat. 642), incapable of affecting or incumbering by any deed, debt, or obligation of any character the lands subsequently allotted to her. Mullen v. Pickens, 250 U. S. 590, 594, 40 S. Ct. 31, 63 L. Ed. 1158; Sizemore v. Brady, 235 U. S. 441, 447, 449, 451, 35 S. Ct. 135, 59 L. Ed. 308; Gritts v. Fisher, 224 U. S. 640, 642, 32 S. Ct. 580, 56 L. Ed. 928.

The Act of May 2, 1890, 26 Stat. 94, which is claimed to have put in force in the Indian Territory sections 2544 and 2545 of Mansfield's Digest, also put in force in that territory the chapter of that digest on wills. That act, however, put these statutes of Arkansas in force in that territory only so far as they were not locally inapplicable or in conflict with any law of the United States. 26 Stat, 94, § 31.

In July, 1903, Sarah Hayes St. John, a full-blood Chickasaw Indian, enrolled and entitled to an allotment, devised all her property to Ida Hayes. She died, her will was probated, and an administrator was properly appointed, who selected 730 acres of the Choctaw and Chickasaw lands as her allotment, and these lands were duly allotted to the deceased pursuant to section 22 of the Supplemental Agreement (32 Stat. 643). Thereupon Ida Hayes brought ejectment against parties in possession of this land. The trial court held, and this court affirmed its decision, that when Sarah Hayes made her will in 1903, before she had selected her allotment, she had no devisable interest in the lands subsequently allotted to her, and that the will was ineffective. Hayes

v. Barringer, 168 F. 221, 224, 225, 93 C. C. A. 507. To the same effect was the subsequent decision and opinion of the Supreme Court in Taylor v. Parker, 235 U. S. 42, 44, 35 S. Ct. 22, 59 L. Ed. 121.

The object and effect of the declaration of heirship, if sustained, would be the same as the object and effect of a will in the same terms made by Jane Bell at the same time. And our conclusion is that, in so far as the Act of May 2, 1890, 26 Stat. 94, § 31, relates to the issue under consideration here, it is inapplicable, because it is in conflict with the Supplemental Agreement and law of the United States of July 1, 1902 (32 Stat. 641), and that, in view of the express terms of the latter act, the decisions and opinions of the courts construing and enforcing it, and the clear and established public policy of the United States in its administration and disposition of the lands of these Indians, the declaration of heirship here under consideration must be, and it is, held to be ineffective and void. The Supreme Court of Oklahoma, in the consideration of this question, has reached the same conclusion. Arnold v. Willis, 232 P. 15.

Our conclusion renders the other questions presented and argued by counsel immaterial, and the judgment below is affirmed.