## JONES v. HILDERBRAND et al.

No. 18933.   Opinion Filed March 12, 1929.

Sullivan & Rice, for plaintiff in error.

Womack, Brown & Cund, for defendants in error.

REID, C.   On January 17, 1927, O. D. Jones filed this suit against H. R. Hilderbrand and B. F. Hilderbrand to recover possession of 100 acres of land in Stephens county, a part of the surplus allotment of Loring Hotinlubbee, a full-blood member of the Choctaw Tribe of Indians, who will be hereinafter referred to as the allottee.   The plaintiff claimed his right of possession under an agricultural lease of the land executed and delivered to him by the allottee on December 3, 1926, which lease began of that date and ran for a term of five years. The defendants admitted the ownership of the land in the allottee, as alleged by plaintiff, but denied that plaintiff had any valid lease on said land, or any other right of possession thereto, and alleged that they were in the rightful possession of the land.

On May 20, 1927, the case was tried to the court without a jury.   In the trial, as well as in the pleadings, it was admitted that the allottee was the owner of the fee-simple title, and the controversy between the parties to the suit was whether plaintiff or defendant had the valid lease on the land.

The trial court gave judgment for the defendants, and the plaintiff appeals.

While recognizing the long-established rule that the plaintiff in an ejectment action must recover upon the strength of his own title, yet, in view of the situation in this case, in which each of the parties claims right of possession under leases from a common source, we set out in chronological order the leases each made by the allottee, as well as another instrument affecting the question, as shown in the record, to wit:

(1)   Lease executed April 22, 1916, to

R. E. Schoolfield for a term beginning January 1, 1917, and ending December 31, 1920.

(2) A lease executed November 17, 1916, to R. H. Brown, beginning November 17, 1916, ending November 16, 1921.

(3) A lease executed August 6, 1920, to Warren B. Phillips, beginning on date made, ending August 5, 1925.

(4) A lease made June 12, 1922, to Warren B. Phillips, beginning on date made and ending June 11, 1927. Also, an assignment of this lease made by Phillips to the defendants on the 2nd day of January, 1922.

(5) A lease December 3, 1926, to O. D. Jones, plaintiff herein, for a term beginning on date made and ending December 2, 1931. This is the lease on which plaintiff rests his right of recovery. ,

A quitclaim deed executed August 15, 1920, by R. H. Brown to the allottee covering the lands in controversy.

As stated, plaintiff seeks to recover by force of lease No. 5 made by the allottee to him on December 3, 1926, but if lease No. 4, made on June 12, 1922, to Warren B. Phillips, and assigned to the defendant, was valid, then plaintiff's lease was void, and therefore the judgment of the trial court was correct. In order to determine the validity of these two leases, all the leases in evidence must be considered.

The applicable parts of the Act of Congress of May 27, 1908, to the questions involved in this case, are as follows:

"Sec. ?. That all lands other than homesteads a......ted to members of the Five Civilized Tribes from which restrictions have not been removed may be leased by the allottee if an adult, or by guardian or curator under order of the proper probate court if a minor or incompetent, for a period not to exceed five years, without the privilege of renewal. * * *

"Sec. 5. That any attempted alienation or incumbrance by deed, mortgage, contract to sell, power of attorney, or other instrument or method of incumbering real estate, made before or after the approval of this act, which affects the title of the land allotted to allottees of the Five Civilized Tribes prior to removal of restrictions therefrom, **and also any lease of such restricted land made in violation of law before or after the approval of this act, shall be absolutely null and void."** (Emphasis ours.)

In the case of Cochran v. Teehee, 40 Okla. 388, 138 Pac. 563, this court, in an opinion by Justice Dunn, in defining the power of Congress to legislate upon the question involved therein, and applying as well to the question herein considered, said:

"Necessarily, no question arising under the act relates to any property acquired by the allottees otherwise than by and through the allotment of the lands belonging to the tribe, because the act does not purport to deal with any property except that. Originally, all of these allotments were taken with restrictions. So far as they were concerned, restriction was the normal condition under which the members of these tribes took their lands. This is not an ordinary condition in tenure of real property, but an ordinary condition and ordinary people were not presented on the parceling of this estate; hence rules and regulations out of the ordinary were required to meet the situation. Congress, recognizing the incompetency of a great majority of the takers to protect themselves and their property from the rapacity of the white men who surrounded and intermingled with them, allotted the lands with certain restrictions upon the right of the allottees to deal therewith. The purpose for which this was done has been stated in many decisions, and it is not necessary to restate it here. Hancock v. Mutual Trust Co., 24 Okla. 391, 103 Pac. 566. Congress retained all of its power and authority, notwithstanding statehood, and its right therein was yielded by the state on its organization. Section 1, Enabling Act (section 413, Williams' Ann. Const. Okla.).'

It first becomes necessary for us to see whether lease No. 1, executed by the allottee to Schoolfield on April 22, 1916, for a term beginning January 1, 1917, and ending December 31, 1920, was a valid lease. And in solving this question, it must be kept in mind that the lease must be good when executed, and find its authority in said act of Congress, otherwise it is "absolutely null and void."

We find that the opinion by Mr. Justice Van Deventer, in the case of Bunch v. Cole, 263 U. S. 250, 44 S. Ct. 101, 68 L. Ed. 290, is controlling upon the question raised by the Schoolfield lease. That part of the opinion of the court applicable to the situation here presented is as follows:

"This was an action by an Indian allottee to recover for a wrongful occupancy and use of his land.

"The plaintiff was an adult Cherokee Indian of the full-blood, enrolled and recognized as a member of the tribe and still a ward of the United States. The land was an 80-acre tract which had been allotted to him in the division of the tribal lands, 40 acres as a homestead and the remainder as surplus land. He had full title, but his power to alien or lease was subject to restrictions

imposed by Congress for his protection. By three successive instruments, each given for a cash rental of $75, he leased the land, both homestead and surplus, to the defendants for agricultural purposes. The first lease was given late in 1915 for a term of one year, beginning January 1, 1916; the second was given early in July, 1916, for a term of one year, beginning January 1, 1917; and the third was given late in July, 1917, for a term of one year, beginning January 1, 1918. The defendants went into possession under the leases, and in 1917 and 1918, sub-let the land to others. From the subletting, the defendants realized $890.40 in 1917, and $384.35 in 1918, these sums representing the actual rental value on a crop-sharing basis in those years. * * * *

"An examination of the several enactments by which Congress has restricted the leasing of Cherokee allotments for agricultural purposes discloses that when the leases in question were given, the situation was as follows:

"1. An adult allottee of the full-blood could lease the homestead for not exceeding one year, and the surplus for not exceeding five years, without any approval of the lease, but could not lease for longer periods without the approval of the Secretary of the Interior.

"2. Any lease not permitted by the restrictions was to be 'absolutely null and void.'

"The permission given to lease for limited periods without approval was not intended to authorize the making of leases which were to begin at relatively distant times in the future, but only the making of such as were to take effect in possession immediately; or, what was equally within the spirit of the permission, on the termination of an existing lease then about to expire. United States v. Noble, 237 U. S. 74, 82, 83, 59 L. Ed. 844, 849, 35 S. Ct. Rep. 532. And see Dovweel v. Dew, 1 Younge & C. Ch. Cas. 345, 62 Eng. Reprint 918, 12 L. J. Ch. N. S. 158, same case on appeal, 7 Jur. 117.

"It is conceded, and we think rightly so, that the leases for 1917 and 1918 fell outside the permission given. Both covered the homestead as well as the surplus land; both were made midway during the term of a like lease theretofore given, and were to take effect in possession on the expiration of that lease, and neither was approved by the Secretary of the Interior. Being outside the permission, they were, as declared in the restricting provision, 'absolutely null and void.'

"Obviously, a lease which Congress, in the exertion of its power over land allotted to an Indian ward, pronounces absolutely void, cannot be validated or given any force by a state; and a state statute which requires that such a lease be regarded as effective for any purpose is necessarily invalid in that respect. Monson v. Simonson, 231 U. S. 341, 347, 58 L. Ed. 260, 262, 34 S. Ct. 71; Nullen v. Pickens, supra. (250 U. S. 590, 595, 63 L. Ed. 1158, 1161, 40 S. Ct. 31.) * * *

"It is not our province to inquire particularly into the need for the protection intended to be afforded by the restrictions; but, if it were, the need would find strong illustration in this case; for it appears that each of the leases was obtained for a cash rental of $75, and that when the time arrived for assuming possession under them, the defendants readily sublet the land on terms which netted then $890.40 in 1917, and $384.35 in 1918,—the latter year being one of pronounced drought."

From the foregoing opinion we can determine the kind of leases full-blood Indian allottees of the Five Civilized Tribes are authorized to make on their allotted lands by said Act of Congress of May 27, 1908. And measured by that opinion, the inquiry now becomes whether the Schoolfield lease **was to take effect in possession immediately; or, what was equally within the spirit of the permission, on the termination of an existing lease then about to expire.**

Evidently the lease did not come within the direct permission given by the act of Congress, as defined by the foregoing opinion, for the lease was made **April 22, 1916,** and was not to take effect in possession until January 1, 1917; nor was the lease within the **spirit** of said act, as interpreted by the opinion, for it was not to take effect in possession on the termination of an existing lease then about to **expire.** The Schoolfield lease was void. The fact that it ran for a term of only four years after January 1, 1917, contributed nothing to its validity.

The record in this case showing no valid lease on the land when lease No. 2 was executed on November 17, 1916, to R. H. Brown, beginning on the date of execution, and ending November 16, 1921, this lease must be held valid.

Next, we must see whether lease No. 3, made August 6, 1920, to Phillips, beginning on date made and ending August 5, 1925, was valid. There was then a lease on this land, good in law, **until November 16, 1921,** and lease No. 3 purported to begin at once and therefore began its term more than one year before the expiration of lease No. 2, and by reason of this it was void.

The case of United States v. Noble, supra, involved the validity of certain mining leases given by a Quapaw Indian upon in-

herited lands restricted in him during the time for which the leases were made, but Justice Hughes there, speaking for the court, decided, in principle, the exact question raised by lease No. 3 in this case. The court held a lease void which began its term before the expiration of a valid lease on the land. The reasons for the conclusion were fully elucidated by the writer of the opinion, but it seems unnecessary to here state them.

The Noble Case was cited in the case of Bunch v. Cole as sustaining the principle there announced. And measured by the rule established by each of these cases, lease No. 3 was void.

One of the late expressions of this court on the question is found in the syllabus of Haddock v. Worrell, 106 Okla. 256, 233 Pac. 730, when this was said:

"An agricultural lease executed and delivered by a full-blood Choctaw Indian, on the surplus allotment, to run for a period of five years from date, before the expiration of an existing five years valid lease, is null and void, and conveys no interest in the property to the second lessee."

Lease No. 4, made June 11, 1922, to Warren B. Phillips, beginning on the date made, and after the expiration of lease No. 2, the only prior valid lease, was good for its term of five years until June 11, 1927. And under an assignment of this lease to them, defendants held possession.

The plaintiff based his right of recovery upon lease No. 5, dated December 3, 1926, beginning its term immediately. This lease was void for the reasons applied to lease No. 3, in that it began before lease No. 4 was to expire June 11, 1927; and this was sufficient to defeat plaintiff's recovery.

The judgment of the trial court is affirmed.

BENNETT, TEEHEE, FOSTER, and LEACH, Commissioners, concur.

By the Court: It is so ordered.

Note.—See "Indians," 31 C. J. §84, p. 517, n. 30.