William A. BACHER, Joseph H. Sage, Raymond Baddour and Milton Goldman, Plaintiffs,

v.

Joseph Patrick PATENCIO and Clarence A. Brechlin, as Conservator of the Estate of Joseph Patrick Patencio, Defendants.

No. 64–515.

United States District Court
S. D. California,
Central Division.

Aug. 12, 1964.

Saul Ruskin, Francis H. O'Neil, Richard L. Huxtable, William G. Coskran, Los Angeles, Cal., for plaintiffs.

Raymond C. Simpson, Long Beach, Cal., for defendant Joseph Patrick Patencio.

James Hollowell, Palm Springs, Cal., for Clarence A. Brechlin, conservator.

BYRNE, District Judge.

Since this case involves a motion to dismiss for failure to state a claim upon which relief can be granted, the substantive facts stated herein are only those pleaded in the complaint.

On April 17, 1964, William A. Bacher, Joseph H. Sage, Raymond Baddour, and Milton Goldman, plaintiffs, filed this action for specific performance and damages against Joseph Patrick Patencio and Clarence A. Brechlin (sometimes hereafter referred to as defendants).

Patencio is an American Indian, who is a duly enrolled member of the Agua Caliente Band of Mission Indians. Brechlin is the Conservator of Patencio's estate, and is sued in that capacity.

Patencio is the Indian allottee of certain described real property in the City of Palm Springs, California. Up through June 9, 1963, the United States of America, through the United States Department of Interior, Bureau of Indian Affairs (hereafter referred to as the Bureau), held the fee title to this real property in trust for Patencio. While Patencio had the beneficial interest in the land he had no right or power to alienate it, and any alienation would have been void.

The dispute involved in this case came about in the following manner. On May 22, 1963, the Bureau accepted bids for the purchase of certain allotments of Indian lands, including Patencio's. Plaintiffs submitted a bid for Patencio's allotment but it was rejected. However, the Bureau's Sacramento Area Director's Office (the Area Director) suggested that the defendants enter into direct negotiations with plaintiffs for the sale of the property. Negotiations were entered into and on May 23, 1963, it was agreed that defendants would petition the Bureau to issue a fee patent to defendants. It was further agreed that upon final approval of their petition defendants would enter into an escrow agreement with plaintiffs whereby the property would be sold to plaintiffs for $161,000.00 in cash. On May 30, 1963, the petition was approved by the Palm Springs office and was forwarded to the Area Director, who was authorized to give final approval to it. Also, on June 7, 1963, Brechlin, as Conservator, was authorized by the Superior Court of the State of California in and for the County of Riverside to apply for the fee patent.

On June 10, 1963, the Area Director gave his final approval to the petition for issuance of a fee patent free of all terms of trust. On the same day, having heard that such approval had been given, plaintiffs and defendants entered into an escrow agreement wherein defendants agreed to sell the property to plaintiffs for the above-mentioned price. Plaintiffs paid 10% into escrow. One term of the escrow read as follows: "The closing of this escrow is subject to a FEE PATENT being issued to the seller by the United States Government." Both defendants signed the escrow agreement. On June 18, 1963, the Area Director advised the Bureau in writing of his final approval of the petition and directed that the fee patent be issued.

However, before the fee patent document could issue Patencio apparently indicated to the Area Director that he no longer wished to have the fee patent issued to him, and the Area Director ordered that it not issue. Since then the Bureau has refused to issue the fee patent to Patencio. Patencio took this action against the advice of and without the consent of Brechlin.

Plaintiffs contend that when the Area Director gave final approval to the peti-

tion only the ministerial act of issuing the fee patent remained, and that Patencio either received title at that moment or the right to demand that the fee patent issue to him. Therefore, say plaintiffs, their contract with defendants may be enforced by this Court, and defendants ought to be required to take the proper steps to convey title to plaintiffs.

Patencio asserts that the contract of June 10, 1963, is clearly unenforceable because of the provisions of 25 U.S.C. § 348.[1] While this section is a part of the General Allotment Act and Patencio is a Mission Indian, whose allotment is generally subject to the terms of the Mission Indian Act of January 12, 1891, 26 Stat. 712, as amended by 68 Stat. 791, it has been held that the two Acts are to be construed in *pari materia*. Kirkwood v. Arenas, 243 F.2d 863 (9th Cir. 1957). Indeed, 68 Stat. 791 applies the provisions of the General Allotment Act to the Mission Indians. Furthermore, section 5 of the Mission Indian Act is the same as the quoted portion of 25 U.S.C. § 348. (Margin note 1).

The purpose of this section, as with much of the law relating to Indians, is paternal in character. Congress long ago reached the conclusion that if Indians were left on their own, crafty settlers and business men would manage to get their land and property away from them. On the other hand, it was felt that Indians should be integrated into the remainder of our society and come to enjoy all of the fruits of our civilization as soon as was practicable. As a step between the tribal stage and the larger society Congress set out a plan whereby an Indian would be given the beneficial use of a certain allotment of land. It would be his own property, in a sense. However, fee title would remain in the United States and the land would be inalienable. No ruse, no contract, no act of any kind, however solemn or well intended, could result in a loss of the allotment. Thus did Congress act to make amends for past wrongs, and to bring the Indian to an equal status in our society. See e. g., Oklahoma v. Texas, 258 U.S. 574, 42 S.Ct. 406, 66 L.Ed. 771 (1922); Monson v. Simonson, 231 U.S. 341, 34 S.Ct. 71, 58 L.Ed. 260 (1913); United States v. Rickert, 188 U.S. 432 (1903); and Arenas v. Preston, 181 F.2d 62 (9th Cir.), cert. denied, 340 U.S. 819, 71 S.Ct. 50, 95 L.Ed. 602 (1950).

Therefore, wherever a sale of property has been made by an Indian during the trust period the courts have not hesitated to strike it down as void. Even if fair consideration has been given for the property the sale will not be allowed to stand; nor need the Indian first return the consideration. The sale is of no effect whatever. See, Whitchurch v. Crawford, 92 F.2d 249 (10th Cir. 1937); United States v. Brown, 8 F.2d 564 (8th Cir. 1925), cert. denied, 270 U.S. 644, 46 S.Ct. 210, 70 L.Ed. 777 (1926); and United States v. Walters, 17 F.2d 116 (D.Minn.1926). And, of course, presence of a warranty clause in a deed will not allow relation back of title when the fee patent is finally issued. There can be no relation back to cure the nullity. Monson v. Simonson, supra, and Probert v. Kibby, 87 Okla. 198, 209 P. 916 (1922). Even if approval is given by an agent of the Bureau the sale is void if the agent had no approval power. United States v.

---

1. "Upon the approval of the allotments provided for in sections 331–334 of this title, by the Secretary of the Interior, he shall cause patents to issue therefor in the name of the allottees, which patents shall be of the legal effect, and declare that the United States does and will hold the land thus allotted, for the period of twenty-five years, in trust for the sole use and benefit of the Indian to whom such allotment shall have been made * * * and that at the expiration of said period the United States will convey the same by patent to said Indian, or his heirs * * *, in fee, discharged of said trust and free of all charge or incumbrance whatsoever * * *. And if any conveyance shall be made of the lands set apart and allotted as herein provided, or any contract made touching the same, before the expiration of the time above mentioned, such conveyance or contract shall be absolutely null and void. * * * *"

Watashe, 102 F.2d 428 (10th Cir. 1939). As this last statement indicates, the good faith of the purchasers is of no consequence. That cannot affect the far-reaching consequences of the public policy determination which has been made by Congress. United States v. Brown, supra. Similarly, as the statute states, all contracts touching the property are void if entered into during the trust period. See, Sage v. Hampe, 235 U.S. 99, 35 S. Ct. 94, 59 L.Ed. 147 (1914), and Whitchurch v. Crawford, supra. Therefore, while the Indian remains in possession of the property and has the right to its full enjoyment, Oklahoma v. Texas, supra, and Arenas v. Preston, supra, the United States retains title and keeps a watchful eye on the welfare of its wards. United States v. Hellard, 322 U.S. 363, 64 S.Ct. 985, 88 L.Ed. 1326, rehearing denied, 323 U.S. 811, 65 S.Ct. 27, 89 L.Ed. 646 (1944); and McKay v. Klayton, 204 U.S. 458, 27 S.Ct. 346, 51 L.Ed. 566 (1907). The interest of the United States is so important that not even a judgment of a court of law in a quiet title action brought by the Indian himself, or in any other action, can stand against an attack by the United States, unless it was a party to or otherwise concurred in the proceeding. See e. g., United States v. Hellard, supra, United States v. Candelaria, 271 U.S. 432, 46 S. Ct. 561, 70 L.Ed. 1023 (1926); and Privett v. United States, 256 U.S. 201, 41 S.Ct. 455, 65 L.Ed. 889 (1921). If this were the extent of the law in this area it would be obvious that plaintiffs could not recover in the case now before the Court. The trust period with respect to this land has not elapsed, and conveyances or contracts relating thereto would be void.

However, Congress has realized that some Indians will be ready to take their place in our society before the trust period elapses. Similarly, it has realized that there will be times when a sale of the property is in the best interest of the Indian. It has, thus, carved out exceptions to the general rule.

For example, 25 U.S.C. § 349 provides that the Secretary can issue a fee patent to an Indian whenever he determines that the Indian allottee is competent and capable of managing his own affairs. Plaintiffs do not assert that this section has been complied with in this case. That is, they do not contend that the application of defendants for a fee patent was made or passed upon pursuant to this section. It should be noted that a Conservator has been appointed for the estate of Patencio, and he has not yet been discharged. The need for a Conservator may well indicate that Patencio is not yet competent to handle his own affairs. Cf., 25 U.S.C. § 954, which provides for appointment of guardians for the Agua Caliente Indians under certain circumstances.

What plaintiffs do claim is that 25 U.S.C. § 405 applies to this case and establishes their right to the relief sought. This section reads as follows:

"Any noncompetent Indian to whom a patent containing restrictions against alienation has been issued for an allotment of land in severalty, under any law or treaty, * * * may sell or convey all or any part of such allotment * * * *on such terms and conditions and under such rules and regulations as the Secretary of the Interior may prescribe,* and the proceeds derived therefrom shall be used for the benefit of the allottee or heir so disposing of his land or interest, under the supervision of the Commissioner of Indian Affairs; and any conveyance made hereunder *and approved by the Secretary of the Interior* shall convey full title to the land or interest so sold, the same as if fee-simple patent had been issued to the allottee." [Emphasis added]

The term noncompetent, it is said, merely describes Indians who are as yet unable to alienate their trust property, although that very fact might be connected to a decision that the person is not yet sufficiently competent to be given a free hand. See, United States v. Nez Perce

County, 267 F. 495 (D.Idaho 1917). That this describes the status of Patencio at this time is not disputed, indeed plaintiffs insist that it does.

Patencio does not appear to claim that the plaintiffs' contract is void, or otherwise unenforceable, simply because the Secretary of the Interior has not personally approved of it. Nor does he seem to contend that the Area Director was not empowered to give final approval to such transactions. See 25 U.S.C. § 1a, providing for delegation of powers. Therefore, it seems that the question of the validity of the contract, and its enforceability against defendants, will be determined by whether the required approval has truly been obtained.

 It is true that the Secretary's approval must normally be obtained before a contract can be considered enforceable. Barring such approval it will be wholly void. See, Spector v. Pate, 157 Cal.App.2d 432, 321 P.2d 59, cert. denied, 358 U.S. 822, 79 S.Ct. 36, 3 L.Ed.2d 63 (1958), rehearing denied, 358 U.S. 938, 79 S.Ct. 310, 3 L.Ed.2d 311 (1959). However, where what is involved is not simply a question of issuing a fee patent to an Indian found to be competent it would seem that such a rigid rule need not be followed. Where all that is entered into is a contract expressly conditioned upon the approval of the Secretary the purpose of the law is served. The Indian will not be overreached at all. See, Anchor Oil Co. v. Gray, 256 U.S. 519, 41 S.Ct. 544, 65 L.Ed. 1070 (1921) and Lykins v. McGrath, 184 U.S. 169, 22 S.Ct. 450, 46 L.Ed. 485 (1902). Any contracts so made can never become valid until they are approved, and all terms and conditions imposed by the Secretary have been met. See, Spector v. Pate, supra. Such an equitable rule has particular application to proceedings under 25 U.S.C. § 405 and the case at hand. Here, according to the complaint, the Bureau itself suggested that defendants enter into negotiations with the plaintiffs. Surely it was expected that some sort of preliminary agreement would then be reached. One was reached,

but the parties tried to be cautious. No written agreement was entered into at that time. Rather, the tentative agreement was submitted to the Bureau and then sent to the Area Director. It was not until June 10, 1963, when the parties heard that the Area Director had approved of the form of the plan, that an escrow agreement was entered into. There can be no doubt that the whole matter proceeded in an aura of fairness to Patencio, and in accordance with Bureau policy. It is true that written approval did not issue until June 18, 1963, but that should not invalidate the contract. Therefore, if the fee patent had issued plaintiffs would, no doubt, have been entitled to specific performance of this agreement. If it had issued the sole purpose would be to allow defendants to proceed to convey to plaintiffs in accordance with the agreement.

Thus, if simple approval of a plan whereby Patencio would sell his property to plaintiffs were all that was needed to vest plaintiffs with a right to have title to the land in question conveyed to them, the complaint would state a claim upon which relief could be granted. However, the statute provides that the sale shall be made on such "terms and conditions" as the Secretary shall prescribe. The question remaining is whether all of such terms and conditions have been met here. A careful analysis will show that they have not.

 From the complaint's own allegations it seems clear that either an expressed or implied term and condition of the Area Director's approval of the arrangement to sell Patencio's land was that Patencio himself remain willing to receive the fee patent up to the time of its actual issuance and delivery to him. Taking the matter most strongly in favor of the plaintiffs, the Area Director has refused to issue the fee patent solely because Patencio does not want it and has, apparently, withdrawn his application. Plaintiffs' contention that once approval was given to the arrangement the title to the land vested in Patencio and they acquired a vested intervening right to

the property cannot stand. It is true that it might be possible to work out an arrangement under 25 U.S.C. § 405 whereby a sale could be approved without the actual prior issuance of the fee patent. But, significantly, even the escrow agreement of June 10, 1963 indicated that closing would be subject to actual issuance of a fee patent to defendants. And it is clear that the Area Director felt that final issuance of a fee patent to Patencio was contingent upon his continuing application. It would be rather foolish to assert that the Area Director has determined that the sale can go ahead without Patencio's continuing application, and that he still refuses to issue the fee patent on which the sale hinges unless Patencio consents. Imposition of a condition of "continuing application" by the Area Director is not unreasonable, as a series of cases arising under 25 U.S.C. § 349 indicates. Under that section the Secretary is empowered to find that Indians are competent to handle their own affairs. He may discharge all restrictions upon such a finding. No mention is made of Indian participation in the proceedings leading to such findings. However, it has been decided that where a fee patent is issued without the application or consent of the Indian it is invalid and cancellable. See, Glacier County v. United States, 99 F.2d 733 (9th Cir. 1938); United States v. Nez Perce County, 95 F.2d 232 (9th Cir. 1938); Board of Commissioners v. United States, 100 F.2d 929 (10th Cir. 1938), modified on other grounds, 308 U.S. 343, 60 S.Ct. 285, 84 L.Ed. 313 (1939); and Glacier County v. Frisbee, 117 Mont. 578, 164 P.2d 171 (1945). Of course, where the patent is issued on the Indian's own application it is valid, Bonds v. Sherburne Mercantile Co., 169 F.2d 433 (9th Cir.), cert. denied, 335 U.S. 899, 69 S.Ct. 294, 93 L.Ed. 434 (1948), and cannot be recalled by the Secretary, United States v. Getzelman, 89 F.2d 531 (10th Cir.), cert. denied, 302 U.S. 708, 58 S.Ct. 27, 82 L.Ed. 547 (1937). In the case now before this Court Patencio applied for the patent, but if it is now issued it

will be against his will, since that application has been withdrawn. The beneficent attitude of the United States toward its Indian wards is reason enough for refusal to issue fee patents without consent. Therefore, imposition of a requirement of continuing application for the patent was not unreasonable.

■ Plaintiffs complain of this backing-out by Patencio at the last minute. But such backing-out is not without precedent. In United States ex rel. Sykes v. Lane, 258 F. 520 (D.C.Cir. 1919), writ of error dismissed, 254 U.S. 618, 41 S.Ct. 217, 65 L.Ed. 441 (1921) the Secretary was authorized to sell Indian lands under provisions which were, generally, in the same form as 25 U.S.C. § 405. Pursuant to this authorization he provided for the removal of restrictions on property of Butter, an Indian allottee. The actual order declared that the restrictions would be removed simultaneously with the "execution" of a deed by Butter to a purchaser, after the land had been sold in compliance with directions from the Secretary. Pursuant to this order the land was offered for sale at a public auction where Sykes bid $1,500.00 and put down 10%, as required by the Secretary. The land had been appraised at $1,300.00, so this was a fair price. Butter was then requested to execute a deed to the land. In accordance with the request he "signed" a deed in favor of Sykes and handed it to an agent of the Secretary for delivery. Before the deed was actually given to Sykes a gas well was brought in within 1½ miles of Butter's property. The Secretary then refused to allow the deal to go through and Sykes sued. The court held that "execution" meant signed and delivered, and since the deed had not yet been actually given to Sykes the deal need not proceed, for the restrictions were never lifted from the land. This was true although Butter himself remained willing to sell. It is difficult to imagine an act of a government agent which is more ministerial than carrying a deed from one party to another, but technical and full compliance with the requirements was neces-

sary. While this case is not precisely like the one now before the Court, it does demonstrate the view that the Secretary retains the power to stop the completion of a transaction up until the moment that every single requirement has been met, even if what motivates him is not a failure by the purchaser to meet some pre-existing rule. In Lane only an unanticipated event resulted in a failure to complete the sale. If the deed had been delivered to Sykes one minute before the discovery of gas he would have owned the property. It was not and he could not compel its delivery. See also, Monson v. Simonson, supra.

In the case now before this Court we are not told what exact form the Area Director's approval of this transaction took. But a necessarily implied condition was that a fee patent actually issue at the continuing application of Patencio. Patencio's application was a condition precedent to the final issuance of the fee patent, and issuance was a condition precedent to the validity of the escrow contract. Without the fulfillment of that condition the agreement was not truly approved and must be considered unenforceable, since the restrictions upon alienation of Patencio's property still remain. The Area Director now refuses to issue the fee patent. He requires the voluntary assent of Patencio before he allows it to issue. If this Court were to order Patencio to apply for the fee patent that would go directly contra to the condition which has been imposed by the Area Director.

Therefore, the plaintiffs find themselves on the horns of a dilemma. If the escrow contract is construed to require Patencio to take a fee patent and sell his property even if he no longer wishes to do so, it does not meet the "terms and conditions" set down by the Area Director, is not approved, and is null and void. And if the escrow contract incorporates *all* of the "terms and conditions" set down by the Area Director it is subject to issuance of the fee patent, which, in turn, is subject to Patencio's being willing to accept a fee patent for his property. In either case the contract is unenforceable, either because it is an absolute nullity or because it is a nullity until Patencio is willing to accept a fee patent. Since this is true, plaintiffs are not entitled to the relief they seek. This result may be harsh to the plaintiffs, but, as Justice Holmes once said, people must turn square corners when they deal with their government. They must do the same when dealing with their government's wards.

The defendants' motion to dismiss on the ground that the complaint fails to state a claim upon which relief can be granted is granted. Counsel for defendants is directed to prepare, serve and lodge a formal order dismissing the action pursuant to Rule 7 of the rules of this Court.