## UNITED STATES v. HADDOCK.

Circuit Court of Appeals, Eighth Circuit.
July 22, 1927.

No. 7727.

1. Indians ☞16(5)—Choctaw allottee's five-year lease on restricted homestead, made with approval of Secretary of the Interior, held valid, though made before expiration of prior one-year commercial lease (Act May 27, 1908, § 2 [35 Stat. 312]; 25 USCA § 356).

Under Act May 27, 1908, § 2 (35 Stat. 312), and Act Feb. 14, 1920, § 18 (25 USCA § 356 [Comp. St. 4234c]), a lease on a restricted homestead for more than one year may be made by an allottee, with the approval of the Secretary of the Interior or the Superintendent of the Five Civilized Tribes prior to the expiration of a one-year commercial lease on such homestead, and hence five-year lease by full-blood Choctaw Indian allottee so made was not invalid as affecting rights of subsequent lessee under one year commercial lease.

2. Courts ☞365(3)—State court's decision as to validity of Indian allottee's lease is not binding on federal court.

Decision of Oklahoma Supreme Court as to validity of Indian allottee's lease under federal statute is not binding on federal court.

In Error to the District Court of the United States for the Eastern District of Oklahoma; Merrill E. Otis, Judge.

Action by the United States against M. M. Haddock. Judgment for defendant, and the United States brings error. Reversed and remanded.

Philas S. Jones, Asst. U. S. Atty., of Wilburton, Okl. (Frank Lee, U. S. Atty., of Oklahoma City, Okl., on the brief), for the United States.

George E. Rider, of Madill, Okl., for defendant in error.

Before KENYON, Circuit Judge, and MOLYNEAUX and JOHN B. SANBORN, District Judges.

KENYON, Circuit Judge. [1] Nancy Emi-yah-tubbee, a full-blood Mississippi Choctaw Indian, received as her homestead allotment under the laws of the United States, the east half of the northeast quarter of the southeast quarter of section 8, and the west half of the southwest quarter of section 9, township 7 south, range 6 west, Jefferson county, Oklahoma, containing 100 acres, more or less, and patent was duly issued therefor, approved by the Secretary of the Interior November 13, 1907. The conveyance contains this clause: "Subject, however, to all the provisions of the aforesaid acts of Congress and to all other laws of the United States pertaining to the alienation and taxation of land included in such homestead allotments, or otherwise affecting the same, and applicable to the said allottee or his heirs."

On August 29, 1924, said Nancy Emi-yah-tubbee, hereafter designated as allottee, entered into a grazing and hay-cutting lease of said land to one J. R. Trout, which provided for the payment to the Superintendent for the Five Civilized Tribes, for the use and benefit of the said Nancy Emi-yah-tubbee, the sum of $90 per year as rental. Said lease was to run for a period of five years. It was regularly approved by the Superintendent for the Five Civilized Tribes on October 21, 1924. In September, 1924, allottee made a one-year oral commercial lease for the year 1925 to defendant in error. October 13, 1925, allottee made a commercial lease in writing to defendant in error for the year 1926. Defendant in error has maintained possession of this land during these years, while lessee, Trout, has paid rentals under his lease, which we term the departmental lease. This action was brought by the United States seeking to cancel the leases to defendant in error, and to establish the validity of the departmental lease and the right to possession of the premises in Trout. The trial court held that the departmental lease to Trout was invalid, and dismissed the bill of complaint.

It is not seriously contended that the leases to defendant in error for 1925 and 1926 were valid, but the question is unimportant, as the time covered by said leases has elapsed, and the question in this case as to their validity is moot. The important and controlling question is: Was the lease to Trout valid?

This lease was made under authority of the Act of May 27, 1908 (35 Stat. 312, § 2) which is as follows:

"That all lands other than homesteads allotted to members of the Five Civilized Tribes from which restrictions have not been removed may be leased by the allottee if an adult, or by guardian or curator under order of the proper probate court if a minor or incompetent, for a period not to exceed five years, without the privilege of renewal: Provided, that leases of restricted lands for oil, gas or other mining purposes, leases of restricted homesteads for more than one year, and leases of restricted lands for periods of more than five years, may be made, with the approval of the Secretary of the Interior, under rules and regulations provided by the Secretary of the Interior, and not otherwise: And provided further, that the jurisdiction of the probate courts of the state of Oklahoma over lands of minors and incompetents shall be subject to the foregoing provisions, and the term minor or minors, as used in this act, shall include all males under the age of twenty-one years and all females under the age of eighteen years."

The departmental lease depends for its validity upon the construction to be given this section. Under it allottee with the approval of the Secretary of the Interior has the right to make a lease on the homestead allotment for a period of more than one year. Had the departmental lease to Trout been made at the expiration of the 1924 lease to defendant in error its validity probably would not have been questioned.

It should be noted that by section 18 of the Act of February 14, 1920 (41 Stat. 426 [Comp. St. § 4234c; 25 USCA § 356]), it is provided that all leases (except oil and gas) made by Indian allottees of the Five Civilized Tribes and previously required to be approved by the Secretary of the Interior shall thereafter be approved by the Superintendent for the Five Civilized Tribes. The lease in question was one for a restricted homestead for a period of more than one year and was duly approved by the Superintendent for the Five Civilized Tribes.

Plaintiff in error concedes the validity of the lease held by defendant in error for the year 1924, so we face squarely the question that the departmental lease was executed and approved while another valid lease was effective and before the termination thereof. The Act of May 27, 1908, does not say that during the existence of a valid lease on a re-

stricted homestead no lease can be made for the future. No particular reason suggests itself why, under the statute of May 27, 1908, such lease could not be made in the manner therein provided. However, defendant in error relies on the case of Deskins v. O'Neal, 108 Okl. 87, 234 P. 626, where it was held by the Supreme Court of Oklahoma that a lease taken under similar circumstances, approved by the Secretary of the Interior, was void, and, being void ab initio, the approval by the Secretary of the Interior could not give it life. That decision is based on the case of United States v. Noble, 237 U. S. 74, 35 S. Ct. 532, 59 L. Ed. 844.

Defendant in error contends that under the doctrine of the Noble Case a restricted allottee has authority, even under the Act of May 27, 1908, to make nothing more than a lease in possession and not in futuro. If the Noble Case is applicable to the present controversy, and goes to the extent claimed by defendant in error, then the departmental lease was void, and the trial court was correct in its conclusion. The decision in the Noble Case was based upon a construction of the Act of Congress of June 7, 1897 (30 Stat. 72). This related to the Quapaw Indian allottees and authorized allottees on the Quapaw Indian Reservation to make leases for a *certain* number of years without approval by the Secretary of the Interior. This provision is as follows: "That the allottees of land within the limits of the Quapaw Agency, Indian Territory, are hereby authorized to lease their lands, or any part thereof, for a term not exceeding three years, for farming or grazing purposes, or ten years for mining or business purposes." Section 1. That act differs from the Act of May 27, 1908, the one applicable here.

It is true the act we are considering provides for leases for *certain* periods of time without departmental approval, as does the Act of June 7, 1897, but it also provides that allottees may make certain leases for an indefinite number of years with the approval of the Secretary of the Interior, and the provision embraces leases of restricted homesteads for more than one year. There is no question involved in the Noble Case of the lease of an allottee's land for an indefinite period with the approval of the Secretary of the Interior. The court there was dealing with overlapping leases and endeavoring to carry out the intention of Congress, which is the governing purpose of these various statutes, viz. to protect the ignorant and inexperienced Indians from the cunning and cupidity of the supposedly superior white

race. It said, referring to overlapping leases: "The practice, to say the least, is an abnormal one, and it requires no extended discussion to show that it would facilitate abuses in dealing with ignorant and inexperienced Indians."

The court practically held that under the Act of June 7, 1897, there was no power in the allottee to make a lease in reversion or in futuro, applying the doctrine at common law as to a tenant for life and quoting with approval from Shaw v. Summers, 3 Moore, C. P. 196, as follows: "A general power to lease for a certain number of years without saying either in possession or reversion, only authorizes a lease in possession and not in futuro. Such a power receives the same construction as a power to make leases in possession. What is expressed in the one is understood in the other." In Bunch v. Cole et al., 263 U. S. 250, 253, 44 S. Ct. 101, 102 (68 L. Ed. 290) the Supreme Court said: "The permission given to lease for limited periods without approval was not intended to authorize the making of leases which were to begin at relatively distant times in the future, but only the making of such as were to take effect in possession immediately or, what was equally within the spirit of the permission, on the termination of an existing lease then about to expire. United States v. Noble, 237 U. S. 74, 82, 83 [35 S. Ct. 532, 59 L. Ed. 844]." It is to be noted in the Noble Case the term is used, "power to lease for a certain number of years." Such is not the situation here as to that part of the statute authorizing the lease in question.

Whenever Congress has authorized Indian allottees to lease their lands without the approval of the Secretary of the Interior it has limited the period for which the leases can be made, and in order to protect the Indian allottees it has been held that Congress intended thereby to authorize the allottees to make leases in possession, and not in futuro or reversion, and such is the doctrine of the Noble Case. But as to leases where the approval of the Secretary of the Interior is necessary to give validity thereto the reason for the rule fails. The allottee is protected by the requirement of departmental approval. The lease here was made and approved as provided by law. Of course, if the lease was void, the approval of the Secretary of the Interior or the Superintendent for the Five Civilized Tribes could not give it life, as the court stated in the Deskins Case. We do not think it void. The act of approval was part of the lease. It was not a valid lease without such approval. The act of approval was

not an attempt to give life to a dead thing. It was a part of the leasing.

The construction contended for by defendant in error that a lease such as is here involved could not be made for an indefinite period with the approval of the Secretary of the Interior under the Act of May 27, 1908, while another lease for a period of one year is in existence on a restricted homestead would open wider the door to fraud and abuse in dealing with the Indians. The beneficent protection of the government could seldom be exercised and desirable, long-period leases would be few. We conclude that under the statute of May 27, 1908, a lease on a restricted homestead for more than one year may be made by the allottee with the approval of the Secretary of the Interior or the Superintendent for the Five Civilized Tribes prior to the expiration of a one-year commercial lease upon said homestead. We see no conflict with the Noble Case in this conclusion.

If we are in error as to our conclusion that the doctrine of the Noble Case as to want of power under the Act of Congress of June 7, 1897, to make a lease by an allottee is not applicable here, yet for another reason we consider the departmental lease to Trout is valid. In the Noble Case, the court says: "This is not to say that an agreement for a new lease, at a fair rental, made shortly before the expiration of an existing lease, would not be sustained in equity." In Bunch v. Cole, supra, the question of leases to begin at *distant times* in the future was referred to. Here we have a situation where the leasing was not completed until October 21, 1924, approximately two months before the lease to defendant in error for 1924 expired. It was an agreement for a new lease at a fair rental, and made shortly before the expiration of the other lease and made in the interest of and to protect the allottee. Assuredly it is not essential that the allottee actually enter into possession of the land before making a lease the validity of which depends upon approval by the government. Such doctrine would substitute mere form for substance, and the opinion in the Noble Case is careful to make clear that such is not the conclusion of the court.

[2] Considerable is said in the Deskins Case as to a new lease made in the regular course of agriculture. That question is not involved here. There is no showing that the new lease is necessary in the regular course of agriculture, but we do not understand why this should be a prerequisite to a new lease made shortly before the expiration of the old one. It is a matter of common knowledge that a lease of lands for a succeeding year is generally made during the term of a lease. It is merely good husbandry. The Deskins Case is an authority against the position of the United States here. We are not of course bound thereby, and, further, the Deskins Case is based on the Noble Case, which we have attempted to differentiate from this case.

The record is not clear as to the manner in which this case was tried. We reverse and remand it for such action as the trial court may deem proper to carry out the conclusion herein expressed, namely, that the departmental lease to Trout is a valid one, and carries with it the right to possession of the property.

Reversed and remanded.