## HOLMES v. UNITED STATES.

Circuit Court of Appeals, Eighth Circuit.
July 1, 1929.

No. 8079.

Alger Melton and Adrain Melton, both of Chickasha, Okl., for appellant.

Frank Lee, U. S. Atty., and Philos S. Jones, Asst. U. S. Atty., both of Muskogee, Okl.

Before STONE, Circuit Judge, and FARIS and SYMES, District Judges.

FARIS, District Judge. Ben Benjamin, a Choctaw Indian of full blood, duly enrolled as such, made to one Roy McMullen an agricultural lease, so-called, and called also in the record a "departmental lease," to distinguish it from certain alleged one-year leases, called in the record "independent leases." This departmental lease was executed by the lessor and lessee, on the 25th day of November, 1924, and by its terms leased the restricted homestead of the Indian lessor "for a period beginning on the first day of January, 1925, fully to be completed and ended on the 31st day of December, 1929." For some reason, not appearing of record, this lease did not come before the Superintendent for the Five Civilized Tribes, for his approval until February 24, 1925, on which day he approved it, thus: "Approved. For term beginning January 1st, 1926." So, when it was ap-

proved, it had by its terms been in force for some eight weeks, and by the terms of approval one year was eliminated from the period of its expressed duration.

On August 6, 1924, said Benjamin executed to Holmes, the defendant herein, a so-called "independent lease" for one year, and expiring, of course, on August 6, 1925. On August 5, 1925, Benjamin executed a second one-year independent lease to defendant, Holmes, which expired perforce its terms, if it was valid, on the 5th day of August, 1926, thus overlapping by some seven months the term set out in the departmental lease to McMullen, as approved.

In this situation, Holmes, being in possession, and McMullen out of possession, the United States on March 27, 1926, brought this action against Holmes, praying for a decree adjudging the lease to McMullen to be valid; that Holmes be adjudged to have no right, title, or interest in this homestead; that such right, title, and interest in said homestead is, and be adjudged to be, vested in said Benjamin, subject to the rights of the alleged lessee, McMullen; that said Benjamin or his lessee be restored to possession; and (inferentially, and of necessity) that Holmes be ejected from possession and for further relief.

The defense urged was that the lease attempted to be made to McMullen was invalid, and that defendant, at the time of this action, was lawfully in possession under his independent lease of August 5, 1925, which, when this suit was begun, had yet some four months to run. The decree went in favor of plaintiff; the court finding in favor of the validity of the departmental lease to McMullen and against the validity of defendant's independent lease, of which latter he decreed cancellation.

Obviously, the action and procedure and prayer are anomalous; conceding arguendo the right of the United States to avail itself of appropriate state statutes to determine interest, and fully conceding the right of the United States to act and sue for the Indian owner. But no technical or procedural questions are anywhere raised upon the record; nor did the trial court by its decree grant the full measure of the mixed and far-flung relief prayed. The battle is pitched by common consent upon the broad field afforded by the single contention, waged pro and con, that the lease to McMullen is invalid, because it was not approved as made. The corollary to this proposition, to wit, that, if the lease to McMullen is invalid, then the lease of August, 1925, to defendant is valid,

seems not to be very strongly disputed by either party. Under the statute, tacitly conceded by both parties to be applicable (Act of May 27, 1908, § 2, 35 Stat. 312), and the decisions of this court, Benjamin seems to have had the legal right, ceteris paribus, to lease this restricted homestead for a period not exceeding one year. United States v. Haddock (C. C. A.) 21 F.(2d) 165. Benjamin did as said, on August 5, 1924, so lease his restricted allotment to Holmes, for a term expiring August 5, 1925. But in the meantime, and while this independent lease was in force, and on November 25, 1924, he executed the lease to McMullen for a term beginning January 1, 1925, and ending December 31, 1929. The latter lease was not approved as made, but approved to begin, not on January 1, 1925, as by its terms was provided, but on January 1, 1926. One year was by the express terms of this approval cut from the lease as made. Therefore, if the lease to McMullen is valid, it was by the terms of this approval made a four-year lease instead of a five-year lease; whereas the minds of McMullen and Benjamin, the makers, had met and agreed upon a five-year lease only.

The question then is, Had the Superintendent for the Five Civilized Tribes, any authority under the law to change the terms of the lease to McMullen; or is his authority limited solely to the approval or disapproval of the lease as made and presented to him? We think the case of Jennings v. Wood (C. C. A.) 192 F. 507, upon clear principle is decisive of this question. There relative to the powers of the Secretary of the Interior (here, the powers of the Superintendent for the Five Civilized Tribes), in the matter of approving leases made by Indian allottees of restricted lands, under a statute (section 72, Act of July 1, 1902, c. 1375, 32 Stat. 716, 726) substantially similar to the statute conceded by the parties here to be controlling (section 2, Act of May 27, 1908, 35 Stat. 312), it was said:

"The jurisdiction of the Secretary of the Interior is only that expressed in the acts of Congress. He was not constituted the general guardian of the estates of the Indians in the sense in which that term is usually employed. Power was not conferred upon him to originate and make leases of allotted lands. That was left to the Indians subject to his approval in specified cases. If an Indian did not desire to lease there was nothing for the Secretary to act upon; if he did, and the lease was for oil and gas, its validity depended on the approval of that official, but he

as not one of the contracting parties. On the contrary, his connection with the transaction and his authority first arose after the minds of the contractors came together, and they must have been competent to make the contract submitted for approval. A disapproval was merely a veto. An approval which proceeds upon a consideration of the terms of the instrument offered and whether they are reasonably for the interests of the Indian was intended as an additional safeguard for his protection. It would not, however, reach back and supply or confirm all the essential, legal prerequisites of a valid contract." Jennings v. Wood (C. C. A.) 192 F. loc. cit. 508.

Clearly, under general law, absent ratification by both parties to the lease, they would not be bound by a lease, the terms whereof had been changed from those wherein there had been a meeting of the minds of the makers. Unless, then, the statute changed the rule, they were not bound here. We think the case of Jennings v. Wood, supra, is ample authority for the view that the statute did not change the general law. This view is supported in broad principle by the case of United States v. Brown (D. C.) 15 F.(2d) 565, wherein at page 567 it is said:

"It is not within the power of the Superintendent of the Five Civilized Tribes to continue in force a lease covering lands of a restricted full-blood Indian which has expired by its own terms or which has expired by reason of the failure of the lessee to comply with the obligations imposed by the covenants in the lease. His duties are prescribed by Acts of Congress, and no such power is conferred upon him. He has no power to lease the restricted lands of Indian heirs or allottees, but has power only to approve leases executed by them. Jennings v. Wood, 192 F. 507, 112 C. C. A. 657."

In the case at bar, the lease was not, as said already, approved as made; therefore it was not in legal effect approved at all. Since the statute required it to be approved (not made) by the Superintendent for the Five Civilized Tribes, acting for the Secretary of the Interior, as a condition precedent to validity, it was therefore not valid, and either party to it was free to disavow it expressly, or implicitly, by acts wholly inconsistent with its terms. This implicit disavowal, we think, occurred when Benjamin executed the second independent lease to Holmes, for a term beginning August 5, 1925, and ending August 5, 1926. As made by Benjamin and McMullen, the so-called five-year departmental lease covered some

seven months of the term of the otherwise valid one-year first lease to Holmes; while, as approved, this departmental lease covered, or lapped over, some seven months of the second one-year independent lease to Holmes. If the second independent lease is invalid, and if the departmental lease be valid, then upon any view there is an hiatus of some five months for which the land was not leased at all. For upon no view was there any departmental lease existing on this land till such lease was approved. We think, if it had been approved unconditionally, though after by its terms it should have gone into effect, it would then have been on all fours with the case of United States v. Haddock, supra, upon which apparently the United States entirely relies here.

In the Haddock Case, as presented and discussed, the sole question up for judgment was whether a departmental lease, of the sort here in controversy, could validly begin in future. There the lease was approved as made in every respect. However, after the execution of the departmental lease in the Haddock Case, and before it became a lease by approval of the Superintendent for the Five Civilized Tribes, but pending such approval, the Indian allottee made a one-year independent lease to another person. Both this court and the parties to the Haddock Case recognized the validity there of the one-year lease, which by its terms covered some eleven months of the term of the departmental lease. Thence arose, in the Haddock Case, the strongly mooted question whether a lease of this sort is valid, if it begins, not in immediate possession, but in the future. It was ruled in the Haddock Case that such a lease is valid, though it begins as to possession in the future, even though actual possession is deferred and prevented by an outstanding, valid one-year independent lease. Obviously, therefore, the distinction between the Haddock Case and this at bar rests alone upon the single fact that there the departmental lease was approved as made, while here it was not approved as made by the parties. In short, there the departmental lease was valid as to formality of execution; while here it is invalid, because the minds of the actual makers never met in the terms of its attempted approval.

From the obvious facts in the case, as well as for the reasons mentioned in the Haddock Case, every right of Holmes shown by the record before us has expired, and so all matters as to his rights under either or both of his leases have become moot questions. So we are not called on to deal with them.

Obviously, the rule announced in the Haddock Case will effectually preclude the arising of a situation having similitude to a merry-go-round. That is to say, no precipitate obtention of other one-year leases can perennially postpone the taking effect of any subsequent departmental lease, if such latter lease shall be promptly made and approved as made.

We are constrained to hold that the trial court erred in sustaining the validity of the lease from Benjamin to McMullen. We reverse it upon this question, and remand it to the District Court for such further action, if any, as counsel may be advised to take in the premises and situation now existing, since we think all other questions in the case are now moot questions.

Reversed and remanded.

SYMES, District Judge, dissents.